## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DAVIDSON OIL COMPANY,**

     **Plaintiff,**

**v.**                                  **No. 1:20-CV-00838-RB-JHR**

**CITY OF ALBUQUERQUE,**

     **Defendant.**

### DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P 12(b)(6)

**COMES NOW** Defendant City of Albuquerque by and through Assistant City Attorney John E. DuBois and Managing City Attorney Kristin J. Dalton and respectfully reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P 12(b)(6). In support of its Reply, Defendant states as follow:

### INTRODUCTION

Defendant City of Albuquerque has moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. [Doc. 8 (the "City's Motion to Dismiss")]. The purpose of a Rule 12(b)(6) Motion is to test the facial sufficiency of the plaintiff's statement of a claim for relief. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997). In opposition to City's motion, Plaintiff filed its Response in Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 12] (the "Plaintiff's Response")]. The Plaintiff's Response is remarkable for the following reasons.

First, the Plaintiff admits its Complaint does not allege any facts as to the City's motive for terminating the Contract. [Doc. 12, p. 6] Plaintiff's theory for the breach of contract, however, is that the City invoked the termination for convenience clause in the Contract in bad faith. [*Id.*, pp.

9-11]  Without averring facts showing bad faith, Plaintiff has no plausible claim against the City. The Plaintiff failed to address the standards as to what constitutes a well-pled complaint. Plaintiff's conclusory statements do not entitle it to the normally deferential rules such as the reviewing court must treat its allegations as true.

Second, Plaintiff failed to appreciate the purpose and legal effect of a termination for convenience clause in a government contract. The law recognizes the termination for convenience clause as an effective and lawful risk-allocating mechanism. Throughout the Complaint and Plaintiff's Response, the Plaintiff simply assumes it had no risk that oil prices would not just lower, but suffer a catastrophic decline at the same time a worldwide pandemic would hit.  By agreeing to the termination for convenience clause in the Contract, Plaintiff willing exposed itself to this risk.  This was an economic risk that the Plaintiff should have taken precautions against, not the City. In making its argument to the contrary, the Plaintiff grossly underestimates the court's ability at the motion to dismiss stage to take judicial notice of adjudicative facts that are either generally known or facts capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned.

Lastly, the Plaintiff admits that the City's motives in terminating the contract pursuant to the termination for convenience clause had not yet been ascertained by Plaintiff. Nor does the Plaintiff allege that it has uncovered any additional facts after filing the Complaint that would show the City's motive, lawful or unlawful. This would make any allowance to amend the Complaint a useless exercise by the Plaintiff's own admission.

**ARGUMENT**

**I.    THE   PLAINTIFF'S   RESPONSE   ADMITS   THAT   PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY FACTS CONCERNING THE REASONS FOR THE   CITY'S   TERMINATION   OF   THE   CONTRACT   PURSUANT   TO   THE TERMINATION   FOR   CONVENIENCE   CLAUSE.     PLAINTIFF'S   CONCLUSORY CLAIMS OF BAD FAITH AND OTHER ALLEGATIONS WITHOUT ALLEGING  A FACTUAL BASIS, IN THE COMPLAINT, ARE INSUFFICIENT TO STATE A CLAIM.**

The Plaintiff fully admits its Complaint fails to allege any facts concerning the City's reasons for terminating the Contract. The Plaintiff states in its Response:

> Yet whether or not the City's termination of the Contract was in fact motivated by financial conditions and, if so, the nature of those conditions, has not yet ascertained in this lawsuit. And more importantly, *the Complaint does not allege any facts concerning the City's actual motivations* or the nature of the conditions the City faced.

[Doc. 12, p. 6 (emphasis added)].  The fact that the Plaintiff's Complaint does not allege any facts concerning the City's actual motivations for terminating the Contract is problematic for the Plaintiff because the Contract agreed to by the Plaintiff contains a termination for convenience clause.  The Plaintiff's escape from a termination for convenience clause would be to allege facts, which later must be proved, that show bad faith or abuse of discretion on the part of the terminating party.  See *MB Oil Ltd., Co. v. City of Albuquerque*, 2016-NMCA-090, ¶  22, 382 P.3d 975. Plaintiff's Complaint is reduced to a claim that the City breached the Contract by invoking a clause agreed to in the Contract that allows for termination at will.   Plaintiff states there was bad faith (an unlawful motivation) on the part of the City but fails to point to any facts alleged in its Complaint that would show bad faith or abuse of discretion.  "It is not, however, proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 ("It would permit a plaintiff 'with a largely groundless claim to simply

take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence"' sufficient to establish a claim upon which relief could be granted) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917 (1975)). Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance some facts might exist which could support a plausible claim. *Roth v. Wilder*, 420 F. App'x 804, 805 (10th Cir. 2011).

Plaintiff, for example, has not alleged that the City never intended to honor the Contract, i.e., that the City entered the Contract with the intent to terminate the contract whenever it found a seller willing to sell at even a modestly lower price. Nor has the Plaintiff alleged that the City entered into the Contract with the specific intent to do the Plaintiff harm. Nor has the Plaintiff claimed that City officials invoked the termination for convenience clause arbitrarily and capriciously.  Nor has the Plaintiff alleged that the City knew in advance of the Contract that another seller would sell the same product at a drastically reduced price due a historic downturn in the oil market because of a price war between two giant oil producing countries and because of an international pandemic reducing the demand for oil worldwide.

At best, the Plaintiff cited its conclusory legal opinion that the City had a sole reason for terminating the contract in its breach of contract count [Doc. 1 at ¶ 27]) and its conclusory legal opinion that the City intentionally used the Contract to harm the Plaintiff in its claim for breach of implied promise of good faith and fair dealing [Doc. 1 at ¶ 34].  Where are the facts alleged to support such claims?  A court is not bound to accept the complaint's legal conclusions and opinions, even if they are couched as facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). *See also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).  The Court, in

examining a complaint under Rule 12(b)(6), should disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest liability. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The task is easy here because the Plaintiff, other than providing a background concerning the Contract's formation, has not laced any of its claims with a factual basis. Making conclusory statements in the Complaint like "[t]he City breached the Contract by terminating it only for the purpose of obtaining more favorable fuel oil pricing elsewhere," "[t]he City acted in bad faith by terminating the Contract and wrongfully and intentionally used the Contract to harm [Plaintiff]" without stating any factual basis for these claims, [Doc. 1 at ¶¶ 27, 32, 34, respectively], the Plaintiff forfeits the leniency given complaints and fails to state a claim for which relief can be granted.

In *MB Oil Ltd., Co. v. City of Albuquerque*, 2016-NMCA-090, ¶¶ 21-23, 382 P.3d 975 the New Mexico Court of Appeals looked to federal cases in the area of government termination of contracts for convenience and found two competing standards without choosing between the two. The first standard only requires that the government does not abuse its discretion or act in bad faith. *MB Oil Ltd., Co*. at ¶ 22 (citing *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1543 (Fed.Cir.1996)). The court noted that a termination for convenience causes a contract breach only when a plaintiff can show "well-nigh irrefragable proof" that the government did not terminate the contract in good faith. *Id*. (citing *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301–02 (Ct.Cl.1976)). The court in *MB Oil Ltd., Co*. goes on to state that this narrow could be met in one of four ways:

(1) if a plaintiff showed that the contracting officer motivated by malice, *MB Oil Ltd., Co*. at id. (citing *Gadsden v. United States*, 78 F.Supp. 126, 128 (Ct.Cl.1948);

(2) if a plaintiff showed that the contracting officer was involved in a conspiracy to get rid of the plaintiff, *MB Oil Ltd., Co*. at *id*. (citing *Knotts v. United States*, 121 F.Supp. 630, 636 (Ct.Cl. 1954));

(3) if a plaintiff showed that the contracting officer sought only to secure a better bargain from a competing supplier in a requirements contract, *MB Oil Ltd., Co*. at *id*. (citing *Torncello v. United States*, 681 F.2d 756, 772 (Ct.C. 1982)); or

(4) if a plaintiff showed that the contracting officer never intended to keep its promise when the promise was made, *MB Oil Ltd., Co*. at *id*. (citing *Krygoski Constr. Co. v. United States*, 94 F.3d at 1545)).

Plaintiff did not allege the first, second, or fourth ways in its Complaint. As to the third way, the court in *Torncello* makes it plain that the contracted officer needed to know in advance of the contract of lower prices and then terminated the contract without a change in circumstances. The *Torncello* court states:

> In the case before us, the Navy had accepted [plaintiff's] bid and had executed a contract knowing that another bid was lower. ... Therefore, we must read the termination for convenience clause in [plaintiff's] contract to require some kind of change from the circumstances of the bargain or in the expectations of the parties. These are just the historical limits on the use of the clause as they have developed from [*United States v. Corliss Steam-Engine Co.*, 91 U.S. 321 (1876)]. On the facts as found by the ASBCA [Armed Services Board of Contract Appeals], at the time that the Navy first called Public Works to do the work that it had contracted with [plaintiff] to have done, there were no changes from the circumstances of the bargain between the Navy and [the plaintiff], or in their expectations. The Navy had known from the competitor's bids, before it made the contract with [plaintiff], that [plaintiff's] price was high and that it could get pest control more cheaply elsewhere. The Navy contracted with [plaintiff] anyway."

*Torncello*, 681 F.2d at 772.  In fact, the third way is just an alternative way of stating the fourth way.  It is certainly not meant to apply when there is an unexpected catastrophic drop in prices.

*Krygoski Construction Company, Inc. v. United States*, 94 F.3d 1537, 1545 (Fed. Cir. 1996), *cert.*

*denied,* 520 U.S. 1210 (1997) states flatly that "*Torncello* applies only when the Government enters a contract with no intention of fulfilling its promises." *See also Salsbury Industries v. United States*, 905 F.2d 1518, 1521 (Fed. Cir. 1990) ("*Torncello* has nothing to do with this case. It stands for the unremarkable proposition that when the government contracts with a party knowing full well that it will not honor the contract, it cannot avoid a breach claim by adverting to the convenience termination clause. In that case, the government entered into an exclusive requirements contract knowing that it could get the same services much cheaper from another outfit.")

The second of the two competing standards as found by the court in *MB Oil* is the changed circumstances test of *Torncello*. *MB Oil Ltd., Co*. at ¶ 23. There can be little doubt that there was a change in circumstances. Plaintiff's own Complaint states: "Beginning in February 2020, the world experienced a severe decline in oil prices apparently caused by the combined economic impact of the COVID-19 virus and a price war between Saudi Arabia and Russia. Oil prices plunged to a 17-year low." [Doc. 1 at ¶ 16].   The price of oil has collapsed since the start of the year.  In April, 2020, it reached below $20 a barrel worldwide, its lowest level in 18 years (and a fall from $70 a barrel in January), while the US benchmark West Texas International fell to its lowest level in history, reaching negative prices.  Prices have been driven down by concerns around oversupply, compounded by the collapse in demand caused by COVID-19 and the price war between Russia and Saudi Arabia. While prices have recovered a little, they remain low – and some estimates predict oil demand may not return to pre-crisis levels until the end of 2021.[1]

---

[1] These facts are judicially noticeable pursuant to Fed. R. Evid. 201. The Court may take judicial notice of "factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir.2007): *United Food and Comm. Workers Union v. Chesapeake Energy Corp.*, 2013 WL 1336123, at * 3 (W.D. Okla. March 29, 2013) (judicial notice of well-publicized prices). *See, e.g.,*  https://markets.businessinsider.com/ commodities/news/oil-

Meanwhile, the COVID-19 virus pandemic has not only not gone away, it has worsen, and it has affected government and private operations at every level as public and private entities attempt to cope and adopt.[2]   The Contract itself recognizes "epidemics" and "quarantine restrictions" as triggering events for the Force Majeure clause.  [Doc. 8-1, ¶ 9 of Terms and Conditions]   Yet Plaintiff in its Response argues that the historic drop in oil prices overlaid with and partially fueled by a deadly world changing epidemic is not a change in circumstances. Plaintiff's Response. [Doc. 12, pp. 12-16]

The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. *Ashcroft v. Iqbal*. 556 U.S. 662, 678-679, 129 S.Ct. 1937 (2009).  Experience and common sense should conclude that there was a definite change in circumstances between January 21, 2020 when the Plaintiff and the City entered into the Contract (Complaint [Doc. 1] at ¶ 11) and March 18, 2020 when the City gave notice it was terminating the Contract effective May 19, 2020 (Complaint [Doc. 1] at ¶ 18).

By failing to allege facts as to the City's motive for the termination of the Contract and making broad conclusory and contradictory statements that merely state the legal elements of its claims, the Plaintiff has not submitted a well-pled Complaint.  The Plaintiff must allege sufficient

---

price-market-stabilizing-recovery-take-months-coronavirus-demand-jpmorgan-2020-5-1029179103 or any other readily available trustworthy source. These facts are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be question, and they were generally known within the jurisdiction of this court because of the wide publicity given.
[2] These facts are also judicially noticeable pursuant to Fed. R. Evid. 201. See, e.g., *United States v. Gamboa*, 467 F.Supp.3d 1092, 1099 (D.N.M. 2020) (Court certainly can and does take judicial notice of the pandemic and the effect it has had not only on the prison population, but on the community at large.)

fact to overcome the presumption under both New Mexico law[3] and federal law[4] that government officials acted in good faith in the public interest.  The Plaintiff has not done that.

## II.    AN UNCONDITIONAL TERMINATION FOR CONVENIENCE CLAUSE IS A LAWFUL AND EFFECTIVE TOOL OF RISK ALLOCATION AND ITS INVOCATION DOES CONSTITUTE A BREACH OF CONTRACT

An unconditional termination for convenience provision is one of the most unique but universal[5] provisions in government contracts.  It allows the government to unilaterally terminate the contract, with or without cause, without incurring a breach of the contract. Termination for convenience. 10A McQuillin Mun. Corp. § 29:129.50 (3d ed.).  As noted in the *MB Oil Ltd., Co* case: "A termination for convenience clause is generally understood to be a risk-allocating tool, intended to permit a government to terminate a contract, even in the absence of fault or breach by the other party, without incurring the usual financial consequences of breach." *MB Oil Ltd., Co*. at ¶ 4, (citing *Mark Dunning Indus. v. Cheney*, 934 F.2d 266, 267 n.1 (11th Cir.1991) (per curiam)) (internal quotation marks and citation omitted).

Given its nature and function of an unconditional termination for convenience clause, and the fact that the Plaintiff willingly agreed to it, it is simply not reasonable for Plaintiff to allege it relied on the Contract to immunize it from the risk of an early termination of the Contract due to a radical change in circumstances.  The question is where did the risk fall that two highly improbable

---

[3] *See, e.g., Planning and Design Solution v. City of Santa Fe*, 1994-NMSC-112, ¶ 5; 885 P.2d 628, 118 N.M. 707 (1994), *State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque*, 1994-NMSC-126, ¶¶ 20, 21, 889 P.2d 185, 119 N.M.150 (1995).

[4] *See, e.g., Librach v. United States*, 147 Ct.Cl. 605, 612 (1959); *Kalvar Corp., Inc. v. United States*, 543 F.2d 1298, 1302 (Ct.Cl. 1976).

[5] A termination for convenience clause is included in every fixed priced U.S. Government prime contract valued above a certain acquisition threshold (currently set at $250,000). Federal Acquisition Regulations, 48 C.F.R. § 49.502(b). In fact, a "termination for convenience" clause has been held to be so fundamental to federal government contracting that it will be read into contracts as a matter of law even if the clause itself is omitted from a written agreement. *G. L. Christian & Assocs.*, 312 F.2d at 426.

events like an international pandemic and an oil price war between Russia and Saudi Arabia would occur simultaneously and create such uncertainty concerning the future and such a catastrophic fall in oil prices that the Contract no longer was tenable to the City?  Did it fall on the buyer of the oil or on the seller of the oil?  Did the onus on the City or on the Plaintiff? The existence and plain language of the unconditional termination for convenience clause makes it clear that the risk lay with Plaintiff, not the City.

The termination for convenience clause in the Contract provides that upon a termination for convenience, the City is required to pay Plaintiff for all goods and services provided to the City prior to the termination for convenience. In other words, the Contract's termination for convenience clause merely limits Plaintiff's ability to claim anticipatory profits for goods or work that were cancelled. *See G. L. Christian & Assocs. v. United States*, 312 F.2d at 426.   The risk that the Contract might be terminated early before any goods or services were due to be delivered fell entirely on the shoulders of the Plaintiff.  The termination for convenience clause does not, however, exculpate the City from all performance obligations; the City remains obligated to pay for any goods actually provided and any work actually performed. Courts have consistently held that this obligation is adequate consideration for an enforceable agreement and does not make the contract illusory. *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1453 (10th Cir. 1990); *Salsbury Indus. v. United States*, 17 Cl. Ct. 47, 58 n. 8 (1989), *aff'd*, 905 F.2d 1518 (Fed. Cir. 1990). However, Plaintiff has not raised that issue in this matter.

## III.   PLAINTIFF SHOULD NOT BE ALLOWED TO AMEND THE COMPLAINT BECAUSE THE PLAINTIFF FAILS TO OFFER FACTS NECESSARY TO STATE A PROPER CLAIM

Plaintiff states "whether or not the City's termination of the Contract was in fact motivated by financial conditions and, if so, the nature of those conditions, has not yet ascertained in this

lawsuit." Plaintiff's Response. [Doc. 12, p. 6]  In other words, Plaintiff has no facts to support a claim of bad faith. The Plaintiff gives no reason to believe that the factual averments necessary to satisfy *Twombly* are either existing or readily available to be included in an amended complaint. A plaintiff should investigate its claim before filing a complaint and not use a federal lawsuit to go on a fishing expedition.

The claim of breach of promise of good faith and fair dealing fails for the same reasons, so amending the Complaint would be futile.

As to Plaintiff's claim of promissory estoppel, Plaintiff has not established how sovereign immunity does not apply. This claim also suffers from a sufficient averment of facts which Plaintiff gives no indication it has if given the chance to rewrite the Complaint.

## CONCLUSION

Plaintiff has not offered a meaningful response to the City's Motion to Dismiss. The City is entitled to the benefit of the bargain it struck: the right to terminate the Contract upon sixty days' written notice and to the vendor under the terms of the Contract for all goods and services provided to and accepted by City, if ordered or accepted by City prior to the effective date of termination. Plaintiff is, in effect, asking the Court to reform the Contract to the bargain Plaintiff wishes it had struck: an agreement to purchase fuel from it without an unconditional termination for convenience clause. There is no cognizable claim to rewrite the parties' contract. Counts I, II, and III therefore, fail to state claims upon which relief can be granted as a matter of law. The Court should dismiss these counts without leave to amend the Complaint.

**WHEREFORE** Defendant respectfully request that this Court grant the Defendant's Motion to Dismiss.

Respectfully submitted,

**CITY OF ALBUQUERQUE**
**Esteban A. Aguilar Jr., City Attorney**

*/s/ John E. DuBois*
John E. DuBois
Assistant City Attorney
Kristin J. Dalton
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500 / F:  (505) 768-4525
jdubois@cabq.gov
kjdalton@cabq.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 7th day of December 2020, I served a copy of the foregoing pleading to the parties listed below through the Court's case management and electronic filing system ("CM-ECF").

Ross L. Crown
Lewis Roca Rothgerber Christie LLP
201 3rd St NW Ste 500
Albuquerque, NM 87102-3366
505.764.5402
rcrown@lrrc.com

*/s/ John E. DuBois*
John E. DuBois

605700