# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVIDSON OIL COMPANY,  §
　　　　　　　　　　　　　　　　§
Plaintiff,  §
　　　　　　　　　　　　　　　　§
vs.  §  **Case No. 1:20-CV-00838-RCB-JHR**
　　　　　　　　　　　　　　　　§
CITY OF ALBUQUERQUE,  §
　　　　　　　　　　　　　　　　§
Defendant.  §

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DAMAGES AND SUPPORTING MEMORANDUM

**CITY OF ALBUQUERQUE**
**Esteban A. Aguilar Jr., City Attorney**

John E. DuBois
Assistant City Attorney
Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500 / F:  (505) 768-4525
jdubois@cabq.gov
dking@cabq.gov


*Attorneys for Defendant*

## TABLE OF CONTENTS

I. INTRODUCTION......................................................................................................... 1

II. UNDISPUTED MATERIAL FACTS................................................................................33

III. DISCUSSION..........................................................................................................6

      A.    THE LEGAL STANDARD FOR MOTIONS FOR SUMMARY
           JUDGMENT............................................................................................6

      B.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR DIRECT OR
           GENERAL  DAMAGES BECAUSE PLAINTIFF CANNOT PROVE SUCH
           DAMAGES UNDER THE TERMS OF THE CONTRACT TO THE REQUISITE
           DEGREE OF CERTAINTY THAT THE LAW REQUIRES...............................8

      C.    THE COURT SHOULD DISMISS PLAINTIFF'S OTHER CLAIMS FOR
           DAMAGES BECAUSE SUCH DAMAGES WERE NOT CONTEMPLATED
           OR ALLOWED OR FORESEEABLE AT THE TIME OF THE MAKING OF
           THE CONTRACT,  AND, IN ADDITION, PLAINTIFF CANNOT SHOW
           PROXIMATE CAUSE OF ITS LOSSES DUE TO THE TERMINATION OF
           CONTRACT............................................................................................11

IV. CONCLUSION...........................................................................................................12

CERTIFICATE OF SERVICE............................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir.1990)......................................................7

*Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199 (D.N.M. 2011) ............ 8

*Allen v. Allen Title Co.*, 1967-NMSC-113, 77 N.M. 796 ............................................................... 8

*Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979 (D.N.M. 2013) .............. 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................... 6, 7, 8

*Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238 (10th Cir.1990)............ 7

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193 (10th Cir.2006)........................... 7

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887 (10th Cir.1991) .................................... 6

*Blair v. U.S. for Use and Benefit of Gregory-Hogan*, 150 F.2d 676 (8th Cir. 1945) ................... 9

*Brown v. Newton*, 1955-NMSC-029, 59 N.M. 274 ........................................................................ 8

*Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, 119 N.M. 436 ................. 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 6

*Colony Nat'l Ins. Co. v. Omer*, No. 07–2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) .. 7

*Conaway v. Smith*, 853 F.2d 789 (10th Cir.1988) ......................................................................... 7

*Eccher v. Small Bus. Admin.*, 643 F.2d 1388 (10th Cir. 1981)................................................... 11

*Ed S. Michelson, Inc. v. Nebraska Tire & Rubber Co.*, 63 F.2d 597 (8th Cir. 1933).................... 9

*Electrical Products Consol. v. Sweet*, 83 F.2d 6 (10th Cir. 1936)................................................. 9

*G4S Technology LLC v. Massachusetts Technology Park Corporation*, 479 Mass. 721, 99 N.E.3d 728 (2018) ................................................................................................................................... 8

*Louis Lyster, Gen. Contractor, Inc. v. Town of Las Vegas,* 1965-NMSC-097, 75 N.M. 427 ...... 11

*Maness v. K & A Enterprises of Mississippi*, LLC, 250 So. 3d 402 (Miss. 2018) ........................ 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................... 7

*Mitchell v. Intermountain Cas. Co.*, 1961-NMSC-138, 69 N.M. 150 .......................................... 12

*Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980) ....................................................... 7

*Schuylkill & Dauphin Improv. Co. v. Munson*, 81 U.S. 442 (1871)............................................... 8

*Spring Creek Exploration & Production Company, LLC v. Hess Bakken Investment, II, LLC*, 887 F.3d 1003, 100 Fed. R. Serv. 3d 840 (10th Cir. 2018).............................................................. 9

*State Farm Gen. Ins. Co. v. Clifton,* 1974-NMSC-081, 86 N.M. 757 .......................................... 12

*Sunnyland Farms v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, 301 P.3d 387.................. 11

*Telecor  Communications, Inc. v. S.W. Bell Tel. Co.*, 305 F.3d 1124 (10th Cir. 2002)............... 10

*Vitkus v. Beatrice Co.*, 11 F.3d 1535 (10th Cir.1993) .............................................................. 6, 8

**Federal Rules of Civil Procedure**

Fed.R.Civ. P. 56(c)(2)..................................................................................................................... 6

Fed.R.Civ.P 56(e)(2)....................................................................................................................... 6

Fed.R.Civ.P. 56(e) .......................................................................................................................... 7

**Legal Treatises**

Restatement Second, Contracts § 347............................................................................................. 9

Richard A. Lord, Williston on Contracts § 64:1 at 7 (4th ed. 2009) .............................................. 9

**Jury Instructions**

NMRA, Civ. UJI 13-843 (Contracts; Measure of Damages; General Instruction)

**Internet Resources**

https://en.wikipedia.org/wiki/Price_elasticity_of_demand

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **DAVIDSON OIL COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Case No. 1:20-CV-00838-RCB-JHR** |
| | § | |
| **CITY OF ALBUQUERQUE,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN WHOLE OR IN PART AS**

**TO DAMAGES AND SUPPORTING MEMORANDUM**

COMES NOW, the City of Albuquerque, Defendant, ("the City" or "the Defendant") through counsel, and hereby moves for partial summary judgment on the element of damages in the claim of breach of contract claim because of lack of proper proof for damages. As further grounds for this motion[1] Defendant states:

## I.   INTRODUCTION

Even if Davidson Oil Company ("Plaintiff") were to avoid summary judgment on the issue of whether the contract was properly terminated by the City, in order to prevail Plaintiff must prove damages to an acceptable degree of certainty as a necessary element of its breach of contract claim. This Plaintiff cannot do given the evidence adduced.

---

[1] As allowed by D.N.M.LR-Civ. 7.5(a), the City combined this Motion with the memorandum in support thereof. Moreover, as required by D.N.M.LR-Civ. 7.1(a), the City attempted to settle this motion before it was filed. Undersigned counsel contacted Plaintiff's counsel via (telephone) on March 9, 2022 to determine if the motion was opposed.  As of the filing of this Motion and Plaintiff opposes the motion

New Mexico law recognizes three (3)  types of damages in contract cases:  *general or direct damages*, which would give the plaintiff whatever value he or she would have obtained from the contract if it had not been breached (loss of profit); *consequential or special damages*, which are not based on the capital or present value of the promised performance but upon benefits it can produce or losses that may be caused by its absence (recoverable only in special circumstances not applicable in this case); and *incidental damages*, which include costs incurred in a reasonable effort, whether successful or not, to avoid loss, as where a party pays brokerage fees in arranging or attempting to arrange a substitute transaction.  Plaintiff has not alleged incidental damages.

The obstacle which cannot be overcome to Plaintiff's recovery of general or direct damages arises from the fact that the Contract did not require the City to purchase any specific amount of fuel from Plaintiff.  The Contract did not even require the City to purchase bulk fuel exclusively from Plaintiff.   Critically, Plaintiff failed to undertake any economic study to calculate the City's elasticity of demand for fuel.  Thus, Plaintiff cannot show how much fuel the City would have purchased from Plaintiff at the inflated price called for in the Contract.   Plaintiff calculated its profit as two (2) cents for each gallon of fuel oil sold to the City, plus about one (1) cent per gallon for transportation cost.  Without knowing the City's elasticity of demand for fuel during the period in question, it cannot be known how many gallons of fuel oil the City would have purchased at the Contract price.  In addition, without knowing how many gallons of fuel oil the City would have purchased at the Contract price, it is impossible to calculate any profit Plaintiff may have made on transportation fees. Any amount claimed would be pure speculation or conjecture and cannot be supported by evidence.

As to the other monetary claims of damages made by Plaintiff, such damages were not contemplated by the parties at the time of the signing of contract. Plaintiff had agreed to only being

compensated for goods or services delivered to or accepted by the City prior to the effective date

of any termination for convenience.

Ultimately, Plaintiff would have lost money on its hedge contracts with or without the City

Contract in place.  These hedge contract losses and the other costs to Plaintiff that resulted from

them are not explicitly discussed in the Contract and were not contemplated by the parties at the

time of the signing of Contract.  In fact, the City was not wholly aware of Plaintiff's hedge

contracts until after the Contract was terminated.

## II.   UNDISPUTED MATERIAL FACTS

1.      Plaintiff voluntarily participated in a procurement process to provide the City with

bulk fuel (diesel and regular unleaded gasoline). Complaint [Doc. 1] at ¶¶ 9-10.

2.      On or about January 21, 2020, the City and the Plaintiff entered into Contract No.

SHR000022076 (the "Contract"). Compl. [Doc. 1] at ¶ 11.

3.      The Plaintiff did not attach a copy of the Contract to its Complaint. A copy of the

contract is attached hereto as Ex. A.

4.      The Contract covered a twelve month period with deliveries to begin on July 1, 2020, and

continue to June 30, 2021. Ex. A, pg. 1

5.      The Contract did not require the City to purchase its fuel from the Plaintiff exclusively. Ex.

A in its entirety.

6.      The Contract did not require the City to purchase any specific amount of fuel from the

Plaintiff. Ex. A in its entirety.

7.      The Contract contains a Termination for Convenience clause which states:

> 11. Termination for Convenience: City may terminate the Contract at any time by
> giving at least 60 days' written notice to the Vendor. In such event, vendor shall be
> paid under the terms of the Contract for all goods and/or services provided to and
> accepted by City, if ordered or accepted by City prior to the effective date of

termination.

Compl. [Doc. 1] at ¶ 13; Ex. A, at ¶ 11.

8.      Plaintiff never sought prior approval for any goods and/or services prior to the effective

date of termination.

9.      The City gave notice to Plaintiff of termination of the contract for convenience on March

19, 2020, which terminated the Contract sixty days later on April 19, 2020.

10.     During the procurement process, Plaintiff calculated it would make two cent profit per

gallon of fuel sold to the City.  *See* Ex. B, Boydstun  Dep. 11: 3-12.

11.     During the procurement process, Plaintiff calculated that with a two (2) cent per gallon

profit, it would make approximately $107,000.00 of profit over the entire contract period by the

sale of fuel and an additional profit of $68,000.00 on transportation costs for an approximate total

profit of $ 785,465.00.  *Id.* at 44: 24-25.

12.     The two (2) sample years Plaintiff used to estimate this profit were ones prior to 2020 in

which there was no worldwide pandemic going on. *Id.* at 14: 5-10.

13.     Plaintiff estimated, based on the two (2) sample years, that the City would purchase a

monthly average for the gasoline, of 155,117 gallons, and for diesel, 293,079 gallons, for a total

of 5,378,352 gallons of fuel for the entire contract period.

14.     Plaintiff did not do a statistical study to determine the risk or statistical likelihood that the

City's usage of fuel oil might deviate significantly from the two sample years. *Id.* at  22:23, 23:20-

25, 24:1-3.

15.     Plaintiff purchased 12 monthly hedge contracts, on January 31, 2020. *Id.* at 17: 2-7.

16.     The  purchase  of  these  hedge  contracts  by  the  Plaintiff  were  without  the  knowledge,

consent, permission or participation of the City. Ex. C Aff. Sanjay Bhakta

17.     Plaintiff lost $601,858.99 on those hedge contracts.  Ex. B, Boydstun Dep. 24:18-20.

18.     Plaintiff did not make an economic study of the City's price elasticity of demand for fuel during the contract period nor an economic study of the City's income elasticity of demand for fuel but admits that the City's elasticity of demand was not totally inelastic.  *Id*. at 37: 24-25, 38:1-25, 39:1-17.

19.     Plaintiff did not do a study of the City's sources of revenue or how an unexpected change to those sources might have income/revenue elasticity of demand for fuel during the contract period. *Id*. at 39: 3-12.

20.     The City has not tried to calculate the City's elasticity of demand for fuel during the contract period but is certain that if forced to buy at a higher price, the City like any other rational consumer would have reduced its consumption of fuel not only due to price sensitivity but also due to sensitivity to the threat of budget revenue reduction.  Ex. C Aff. Sanjay Bhakta ¶ 11

21.     For the first 6 months of COA's 2021 fiscal year, which spanned the period from July 1, 2020 through December 31, 2020, the City consumed 1.5 million gallons of diesel fuel at an average price of $1.45 per gallon, for a total cost of $2.1 million, excluding fees and taxes. For the same period, COA also consumed 1.0 million gallons of gasoline at an average price of $1.44 per gallon, for a total cost of $1.5 million, again excluding fees and taxes. Ex. D, AFF Daniel, ¶ 8

22.     If the Contract had not been terminated, the prices the City would have had to pay to Plaintiff under the terms of the Contract were $ 1.7732 per gallon for regular gasoline and $ 1.9798 per gallon for the diesel.

23.     What austerity measures the City would have taken to conserve fuel if forced to buy at the higher prices of is not known to any degree of certainty and would be pure speculation but it is certain there were a wide spectrum of measures the City could have adopted ranging from

shortening or even eliminating some bus routes, and reducing bus schedules and run times, reduction in garbage pick ups, and so forth. Ex. C, ¶¶ 20-21.

24.     Due to the pandemic, the City purchased less fuel oil during contract period than the year previous.

25.     For the full fiscal year 2021 COA saved $800,000, net of hedging costs, compared to what it would've paid under the Davidson Oil agreement. Ex. D AFF. Daniel. ¶ 8

## III.   DISCUSSION

### A.  THE LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) states in pertinent part that summary judgment "should be rendered if the leadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c)(2). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991) (internal quotation marks omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted). Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.") (internal quotation marks omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule— set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir.1990); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980) ("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07–2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed.R.Civ.P. 56(e) and *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir.2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" *Colony Nat'l Ins. Co. v. Omer*, 2008 WL 2309005, at *1 (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988)

Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A mere "scintilla" of evidence will not avoid summary judgment.

*Vitkus v. Beatrice Co.*, 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251 (quoting *Schuylkill & Dauphin Improv. Co. v. Munson*, 81 U.S. 442, 448 (1871)); *Vitkus v. Beatrice Co.*, 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (internal citations omitted).

### B. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR DIRECT OR GENERAL  DAMAGES BECAUSE PLAINTIFF CANNOT PROVE SUCH DAMAGES UNDER THE TERMS OF THE CONTRACT TO THE REQUISITE DEGREE OF CERTAINTY THAT THE LAW REQUIRES

Proving damages is a necessary element in a breach of contract claim.  "Under New Mexico law, '[t]he elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, *and damages.*' " *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1030 (D.N.M. 2013) (quoting *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)) (emphasis added).

The purpose of allowing damages for breach of contract is to restore to the injured party what was lost by the breach and what he or she reasonably could have expected to gain had there been no breach. *Allen v. Allen Title Co.*, 1967-NMSC-113, 77 N.M. 796; *Brown v. Newton*, 1955-NMSC-029, 59 N.M. 274. It is not the policy of the law to award damages which would put the nonbreaching party to a contract in a better position than if the breaching party had carried out its contract. *G4S Technology LLC v. Massachusetts Technology Park Corporation*, 479 Mass. 721, 99 N.E.3d 728 (2018).   Breach of contract damages should be the amount that would place the nonbreaching party in the position where it would have been but for the breach, no more and no

less. *Maness v. K & A Enterprises of Mississippi*, LLC, 250 So. 3d 402 (Miss. 2018); *see also*, Restatement Second, Contracts § 347.  A plaintiff is not entitled to a windfall. Richard A. Lord, Williston on Contracts § 64:1 at 7 (4th ed. 2009). The general rule of contract damages is that the person who is injured is to be placed in the position he would have been in had the contract been performed, but not in a better position. Therefore, Plaintiff may entitled to contract damages in an amount equivalent to the difference between the benefits it actually received and those to which it was due under the Contract—but no more. *Blair v. U.S. for Use and Benefit of Gregory-Hogan*, 150 F.2d 676, 678 (8th Cir. 1945)  *Ed S. Michelson, Inc. v. Nebraska Tire & Rubber Co.*, 63 F.2d 597, 601 (8th Cir. 1933); *Spring Creek Exploration & Production Company, LLC v. Hess Bakken Investment, II, LLC*, 887 F.3d 1003, 1026, 100 Fed. R. Serv. 3d 840 (10th Cir. 2018), *as revised*, (Apr. 13, 2018) (the root purpose of a contract remedy is to place the plaintiff-promisee in as good a position as it would have occupied had the defendant-promisor not breached the contract); *Electrical Products Consol. v. Sweet*, 83 F.2d 6, 9 (10th Cir. 1936).

Thus, under the circumstances of present matter, the law requires the fact-finder to create an alternative universe in which the City did not terminate the Contract and determine what would have happened, i.e., what profits would the Plaintiff have made.  It is not permitted to posit a perfect universe in which there was no pandemic. The alternative universe must contain all the facts and circumstance of the historical universe with one exception only, the City did not terminate the Contract.  In other words, how many gallons of fuel would the City have purchased from the Plaintiff under the terms of the Contract?  Take that number times the two (2) cents per gallon profit Plaintiff claims it would have made, and you have the direct damages owed to Plaintiff. Simple, right?  Except the City under the Contract was not obligated to purchase any specific

amount of fuel from Plaintiff.  It is not known how many gallons of fuel the City would have purchased from the Plaintiff, and any guess or estimate would be unlawful speculation.

It is known how many gallons of fuel the City purchased from TAC during period covered by Contract, but that was at prices far less than the Contract price.  Common sense and basic economic theory tells us the City would have purchased less fuel at the higher than Contract price, but how much less?  This can only be rationally calculated if the City price elasticity of demand for fuel is known for the period in question.

A good's price elasticity of demand (PED) is a measure of how sensitive the quantity demanded of a product is to its price.[2]  When the price rises, quantity demanded falls for almost any good including fuel.[3]  This can be shown with a simple diagram:



Plaintiff admits that the City's PED, was not perfectly inelastic. "A market is elastic if demand goes down as price goes up." *Telecor  Communications, Inc. v. S.W. Bell Tel. Co.*, 305 F.3d 1124, 1131 (10th Cir. 2002).  In the diagram, P2 would the TAC price, and P1 would be the Contract price. Q2 is the amount of fuel purchased from TAC, and Q1 would be the amount of fuel the City would have purchased from Plaintiff at the Contract price.  P1, P2, and Q2 are known.  Q1 cannot be

---

[2] Many economics texts and articles describe the factors influencing the elasticity of demand for particular products and services. See, e.g., McEachern, William A., *Economics* (4th edition); and Pindyck, Robert S. and Rubinfeld, Daniel, L., *Microeconomics* (5th edition), Prentice Hall, Chapter 2 and Chapter 14.
[3] https://en.wikipedia.org/wiki/Price_elasticity_of_demand

determined because the slope of the demand is not known. Plaintiff failed to conduct an economic study to determine the City's PED which can be thought of as the slope of demand curve. How many gallons of fuel would the City have purchased from Plaintiff under the inflated prices of the Contract in July of 2020? It is not known. The only thing that be said for certain is that the amount would have been less than what the City purchased from TAC at a cheaper price during that same period. How much less is pure speculation. Put in concrete terms, how many gallons of fuel would the City have purchased from the Plaintiff in August of 2020, or September of 2020, or January of 2021? Who knows? One guess is as good as another. It could even be zero because the City was not obligated to purchase exclusively from Plaintiff.

Damages based on a "rough estimate" by a witness are insufficient to support a judgment. Rather damages must be of a kind and character susceptible of proof, and the amount of damages allowed must be subject to reasonable ascertainment and not based on speculation or guesswork. *Louis Lyster, Gen. Contractor, Inc. v. Town of Las Vegas,* 1965-NMSC-097, 75 N.M. 427. Even though the amount of damages need not be proven with mathematical certainty, *Eccher v. Small Bus. Admin.*, 643 F.2d 1388, 1392 (10th Cir. 1981), neither can it be based on surmise, conjecture, or speculation. *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 32, 119 N.M. 436, *overruled in part on other grounds, Sunnyland Farms v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, 301 P.3d 387. Therefore, Plaintiff's claim for damages in the form of lost profits should be dismissed.

C. **THE COURT SHOULD DISMISS PLAINTIFF'S OTHER CLAIMS FOR DAMAGES BECAUSE SUCH DAMAGES WERE NOT CONTEMPLATED OR ALLOWED OR FORESEEABLE AT THE TIME OF THE MAKING OF THE CONTRACT,   AND, IN ADDITION, PLAINTIFF CANNOT SHOW PROXIMATE CAUSE OF ITS LOSSES DUE TO THE TERMINATION OF THE CONTRACT**

The elements of damages must be the natural and foreseeable consequences of the breach, as contemplated by the parties at the time of making the contract. *State Farm Gen. Ins. Co. v. Clifton*, 1974-NMSC-081, 86 N.M. 757; *Mitchell v. Intermountain Cas. Co.*, 1961-NMSC-138, 69 N.M. 150.  Plaintiff's losses due to its hedge contracts was not contemplated at the time of the signing of the Contract.  In addition, those losses would have occurred even if the Contract had not been terminated.  Thus, Plaintiff cannot show that these unauthorized expenses were proximately caused by the City's termination of the Contract.

## IV.   CONCLUSION

Since the Plaintiff will bear the burden of proof at trial on the essential element of damages, the City can prevail merely by pointing out to the court that there is an absence of evidence to support the Plaintiff's case on the issue of damages . Based on the argument and authorities laid out above, the Defendant City has met its burden, and so respectfully request that this court enter partial summary judgment against Plaintiff Davidson Oil in the City's favor.  The only issue left would be to determine if Plaintiff was due nominal damages.

Respectfully submitted,

**CITY OF ALBUQUERQUE**
**Esteban A. Aguilar Jr., City Attorney**

*/s/ John E. DuBois*
John E. DuBois
Assistant City Attorney
Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500 / F:  (505) 768-4525
jdubois@cabq.gov
dking@cabq.gov


*Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I certify that on this 11th day of March 2022, I served a copy of the foregoing pleading to the party listed below through the Court's case management and electronic filing system ("CM-ECF").

Ross L. Crown
Lewis Roca Rothgerber Christie LLP
201 3rd St NW Ste 500
Albuquerque, NM 87102-3366
505.764.5402
rcrown@lrrc.com


*/s/ John E. DuBois*
John E. DuBois

267456