**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DAVIDSON OIL COMPANY,**

**Plaintiff,**

**vs.**                                    **Case No. 1:20-CV-00838-RB-JHR**

**CITY OF ALBUQUERQUE,**

**Defendant.**

---

**DEFENDANT CITY OF ALBUQUERQUE'S RESPONSE TO PLAINTIFF DAVIDSON
OIL COMPANY'S MOTION FOR SUMMARY JUDGMENT**

---

SANCHEZ, MOWRER & DESIDERIO, P.C.

Robert J. Desiderio
Erin S. Ferreira
Janette Angelica Duran
Post Office Box 1996
Albuquerque, NM 87103
T: 505-247-4321
F: 505-247-4441

CITY OF ALBUQUERQUE
Esteban A. Aguilar Jr., City Attorney

John E. DuBois
Assistant City Attorney
Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
T: (505) 768-4500
F: (505) 768-4525

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION ................................................................................................................1

CITY'S RESPONSE TO DAVIDSON'S UNDISPUTED MATERIAL FACTS ....................3

ARGUMENT .......................................................................................................................6

    I.       THE CITY WAS ENTITLED TO EXERCISE THE TFC ......................................6

          A.      The City did not act in bad faith or abuse its discretion. ...............................6

                1.      The City did not intend to terminate the contract at the time of execution of contract. .................................................................................7

                2.      The City did not terminate the contract in bad faith. .......................11

          B.      There was a sufficient change in circumstance. .........................................12

    II.      THE CITY DID NOT BREACH AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.................................................................................................14

          A.      The Implied Covenant Of Good Faith And Fair Dealing Does Not Override The TFC. ............................................................................................................14

          B.      Even Assuming That The Implied Covenant Of Good Faith And Fair Dealing Applies, The Facts Do Not Support That The City Breached The Implied Covenant. ..........................................................................................................15

III.     EVEN IF THE CITY'S EXERCISE OF THE TFC CONSTITUTED A BREACH

OF CONTRACT, THE FACTS DO NOT SUPPORT DAVIDSON'S DAMAGES CLAIM

....................................................................................................................................16

IV.     DAVIDSON IS NOT ENTITLED TO ITS COSTS OF ITS HEDGING

POSITION..........................................................................................................................17

CONCLUSION..................................................................................................................19

# TABLE OF AUTHORTIES

**Statutes**

NMSA, 1978 § 37-1-23(A) (1976) ............................................................................. 18

**New Mexico Cases**

*Bauer v. College of Santa Fe*, 2003-NMCA-121, 134 N.M. 439, 78 P.3d 78. ............................ 18

*Continental Potash, Inc. v. Freeport McMoran*, *Inc.*, 1993 NMSA-039, 116 N.M. 690, 858 P.2d 66 ................................................................................................................................. 15

*Gilmore v. Dubustadt,* 1998-NMCA-086, 125 N.M. 330, 961 P.2d 175. ................................... 16

*Horanberg v. Felter*, 2004-NMCA-121, 136 N.M. 435, 99 P.3d. 685. ...................................... 18

*Mb Oil Ltd., Co., v. The City of Albuquerque,* 2016-NMCA-090, 382 P.3d 975 ........... 6, 7, 12, 15

*Melnick v. State Farm Mut. Auto Ins. Co.*, 1988-NMSC-012, 106 NM 726, 749 P.2d 1105. 14, 15

*Paiz v. State Farm Fire and Car Co.*, 1994-NMSC-079, 118 NM 203, 880 P.2d 300. ............... 15

*Planning and Design Solution v. City of Santa Fe*, 1994-NMSC-112, 118 N.M. 707, 885 P.2d 628 ................................................................................................................................... 6

*Quarrie v. N.M. Inst. Of Mining & Tech.,* 2021-NMCA-044, 495 P.3d 645 ............................... 18

**Other Cases**

*Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887 (10 Cir. 1991) ......................... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 12

*In Borges,* 485 B.R. 743 (D.N.M. 2019) .......................................................................... 15, 16

*Kalvar Corp. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976) ...................................................... 7

*Krygoski Constr. Co. v. United States*, 94 F.3d 1537 (10 Cir. 1996). ..................................... 6, 7

*Torncello v. United States*, 681 F.2d 756 (Ct. Cl. 1982) .......................................................... 12

**INTRODUCTION**

On January 21, 2020, the City of Albuquerque ("City") and Davidson Oil Company ("Davidson") entered into a contract, according to which the City agreed to purchase for one year all its fuel needs from Davidson.  The contract was to take effect on July 1, 2020, the first day of the City's 2020-2021 budget year, and included a Termination for Convenience clause ("TFC").

Soon after the City entered into the contract, two unexpected and catastrophic events occurred: First, as a result of a disruption in the oil market caused by a conflict between Russia and Saudi Arabia, the price of oil decreased dramatically; and second, the COVID-19 pandemic became a public health emergency. Christopher Daniel Deposition at 33:18-25; 34:1-6, attached as **Exhibit A**. On February 7, 2020, following the collapse in oil prices, the City emailed Davidson requesting a reduction of the fuel prices provided in the contract.  Davidson MSJ at 6, ¶ 17. Davidson declined to reduce the prices. *Id.* at 6, ¶ 18.

On March 18, 2020, the New Mexico Department of Finance and Administration ("DFA") sent the City a notice of a change in the budgeting process for fiscal year 2020-2021. *See* Sanja Bhakta's Aff., ¶13, attached as **Exhibit B**.  The cause for the notice of a budgetary change was the COVID-19 pandemic. *Id.*  Forecasting a drastic down swing in state revenues, especially gross receipts taxes, DFA recommended local governments adopt a rollover budget; that is, to retain their 2019-2020 budgets as their 2020-2021 budgets. *Id.*  The rollover budget permitted the City to operate on a month-to-month basis, allowing the City to react to any further reduction in revenues. *Id.*  Following DFA's recommendations, on April 13, 2020, the Albuquerque City Council approved a rollover budget for fiscal year 2020-2021. *See id.* ¶¶ 14-15.  This change was a radical change from the City's usual budgetary process.  *Id.* ¶ 16.

The rollover 2019-2020 budget necessarily did not include all the proposed expenditures anticipated for the 2020-2021 fiscal year.  The City, therefore, was required to reconsider many contracts that were to take effect on July 1, 2020, for 2020-2021 fiscal year, including the City's contract with Davidson.  Defendant City of Albuquerque's Supplemental Response to Plaintiff's Interrogatory No. 15, Bates stamped documents 1460-86, attached as **Exhibit C**.  Before terminating the contract as permitted by the TFC, the City attempted to renegotiate fuel prices Davidson MSJ at 6 ¶ 17.  The City's intent that the losses resulting from the plummeting price of oil would be shared by both it and Davidson.  Davidson refused to reduce its fuel prices, *id*. at 6, ¶ 18, leaving the City with little choice except to terminate the contract.  But even after terminating the contract, the City continued to discuss with Davison a resolution of the matter.  Sanja Bhakta's Deposition at 72: 2-23, attached as **Exhibit D.** By June 25, 2020, the City realized that a resolution was not in the cards and thus informed Davidson that its decision to terminate the contract was final.  Davidson MSJ at 8, ¶¶ 23-24.

In its Motion for Summary Judgment, Davidson raises four issues:

1. Whether the City was entitled to terminate the contract under the TFC. Davidson MSJ at 12-22;

2. Whether the implied covenant of good faith and fair dealing applies, and if so, whether the City violated that covenant. *Id.* at 22-23;

3. Assuming the City breached either the contract or the implied covenant of good faith and fair dealing, whether Davidson is entitled to recover the damages it alleges to have suffered. *Id.* at 23-26; and

4.  Assuming, on the other hand, that the City did not breach the contract or the implied covenant of good faith and fair dealing, whether Davidson is entitled to recover its alleged losses from its hedge contracts. *Id.* at 26-27.

## CITY'S RESPONSE TO DAVIDSON'S UNDISPUTED MATERIAL FACTS

1.  City admits the allegations in paragraph 1.

2.  City admits the allegations in paragraph 2.

3.  City admits the allegations in paragraph 3.

4.  City admits the allegations in paragraph 4.

5.  City admits the allegations in paragraph 5.

6.  City admits the allegations in paragraph 6.

7.  City admits the allegations in paragraph 7.

8.  City admits the allegations in paragraph 8.

9.  City admits the allegations in paragraph 9.

10. City admits the allegations in paragraph 10.

11. City admits the allegations in paragraph 11.

12. City admits the allegations in paragraph 12.

13. City admits that Davidson purchased hedge contracts, but lacks sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations in paragraph 13 and therefore denies those allegations.

14. City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 and therefore denies those allegations.

15. City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 and therefore denies those allegations.

16. City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 and therefore demies those allegations.

17. City admits the allegations contained in paragraph 17.

18. City admits that Davidson declined City's requested price reduction and that City and Davidson agreed to fixed prices.  City lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 18 and therefore denies those allegations.

19. City admits that on March 19, 2020 it provided Davidson notice of its intent to terminate the contract on May 19, 2020, but denies that the stated reasons were only the decline in oil prices and the COVID-19 pandemic.  The termination resulted directly from budgetary concerns caused by predicted lost revenue following the onslaught of the COVID-19 pandemic. *See* **Exhibit B, ¶** 12; **Exhibit D** at 59-60; City's Answer to Interrogatory No. 8. attached as **Exhibit E**.

20. City admits the allegations in paragraph 20.

21. City admits the allegations in paragraph 21.

22. City admits the allegations in paragraph 22.

23. City admits the allegations in paragraph 23.

24. City admits the allegations in paragraph 24, except that City lacks sufficient knowledge or information to form a belief whether Davidson's motive was to mitigate its damages and therefore denies that allegation.

25. No response is required for paragraph 25 because the paragraph contains a legal conclusion.  To the extent a response is required, City lacks sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 25 and therefore denies those allegations.

26.   City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 and therefore denies those allegations.

27.   City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 and therefore denies those allegations.

28.   City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 and therefore denies those allegations.

29.   City lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 and therefore denies those allegations.

30.   City admits that in its RFB, it provided prospective bidders with its historical usage of diesel fuel and unleaded gasoline.  The City is without sufficient knowledge or information to form a belief as to the truth of remaining allegations in paragraph 30 and therefore denies those allegations.

31.   City admits that the contract called for Davidson to deliver fuel it sold to City.  City lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 31 and therefore denies those allegations.

32.   City admits that Truman Arnold Company provided it fuel after City terminated the contract.  City lacks sufficient knowledge or opinion to form a belief as to the truth of the remaining allegations in paragraph 32 and therefore denies those allegations.

33.   City denies the allegations in paragraph 33.

34.   City denies the allegations in paragraph 34.

35.  City admits there was a decline in world oil prices in January 2020.  City lacks sufficient knowledge or information to form a belief as to the remainder of the allegations in paragraph 35 and therefore denies those allegations.

## ARGUMENT

## I. THE CITY WAS ENTITLED TO EXERCISE THE TFC

The key issue in this case is whether the City properly exercised the TFC, terminating the contract with Davidson. If the City validly exercised the TFC, it was excused from its obligation to purchase fuel from Davidson and therefore did not breech the contract.  Davidson asserts that the City did not validly exercise the TFC and thus breached the contract because it: (1) abused its discretion or acted in bad faith in exercising the TFC, and (2) there was not a sufficient change in the circumstances to warrant exercise of the TFC. Davidson MSJ at 14-22. To the contrary, the decrease in oil prices and the COVID-19 pandemic were substantial unanticipated changes in circumstances, and the City therefore did not abuse its discretion or act in bad faith when it exercised the TFC, terminating the contract.

### A.  The City did not act in bad faith or abuse its discretion.

The burden to prove abuse of discretion or bad faith rests on Davidson. That is a heavy burden because it is presumed that public officials, including municipal officers, act in good faith. *Planning and Design Solution v. City of Santa Fe*, 1994-NMSC-112, ¶ 5, 118 N.M. 707, 885 P.2d 628, *see also Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1541 (10 Cir. 1996).  Therefore, "a termination for convenience causes a contract breach only when a plaintiff can show 'well-nigh irrefragable proof' that the government did not terminate the contract in good faith." *Mb Oil Ltd., Co., v. The City of Albuquerque,* 2016-NMCA-090, ¶22, 382 P.3d 975 (citing *Kalvar Corp. v.*

*United States*, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976)). "Due to this heavy burden of proof, contractors have rarely succeeded in demonstrating the Government's bad faith" *Krygoski Constr. Co*, 94 F.3d at 1541.  To meet this "narrow standard" the plaintiff must show that "the contracting officer was (1) motivated by malice; (2) involved in a conspiracy to get rid of the plaintiff; (3) sought only to secure a better bargain from a competing supplier in a requirements contract; or (4) never intended to keep its promise when the promise was made." *Mb Oil Ltd., Co.,* 2016-NMCA-090, ¶22 (internal citations omitted). Davidson alleges that the City either never intended to keep its promise when the promise was made, Davidson MSJ at 18, or sought only to secure a better bargain from a competing supplier when it terminated the contract.  Davidson MSJ at 14. However, the "undisputed facts" do not support either of these accusations; instead, they show that neither is the case and that the City acted in good faith both when it entered into the contract and when it terminated the contract.

1.      <u>The City did not intend to terminate the contract at the time of execution of contract.</u>

Davidson alleges that at the time the contract was executed, the City intended to terminate the contract if it discovered a vendor selling fuel at lower prices. Davidson's support of that allegation is based on two facts: Chief Financial Officer Sanja Bhakta's deposition testimony, and the City's February 7th request that Davidson consider lowering its prices. Davidson MSJ at 16-18.

During his deposition, Sanja Bhakta was asked:

Question: So, is it fair to say at the time the contract was awarded, the City did not intend to pay a fixed price for fuel oil if the market price for fuel oil declined substantially?

Answer: I just don't know.

**Exhibit D**. at 30:9-13. Davidson concludes from the above answer that the City intended to terminate the contract if it found a vendor selling at a lower price.  Davidson MSJ at 18.  That conclusion is spurious. Sanja Bhakta's response only means that the City had not considered what it would do in the extremely unusual events of a massive drop in oil prices and the COVID pandemic, as is clear from the rest of Mr. Bhakta's answer.

Answer:  I just don't know.  *I don't know what the future would be.*

**Exhibit D** at 30:9-13. (emphasis added). Sanja Bhakta further was asked and answered the following questions:

Question: Well, as I'm understanding your testimony, you're saying that if the market price fell substantially, using your words, the City may not be willing to pay a fixed-price throughout the term of the contract; is that a fair statement?

Answer: I think a fair statement would be the City did not anticipate the price of a decline or rise substantially.

Question: My question is a little different. My question is: Did the City consider that if the price did fall substantially, it would not honor the fixed price it had negotiated?

Answer: That's very hypothetical, because I didn't even think the price would rise or decline substantially.

> Question: Well, as Chief Financial Officer of the City of Albuquerque, I would
> think that you, basically, need to anticipate all kinds of things, even if they are
> unusual; isn't that fair to say.

> Answer: Unfortunately, I did not anticipate COVID-19 and pandemic. I did not
> anticipate that at all, as the Chief Financial Officer.

*Id.* at 30:9-25-31:1-11 In context, these answers do not rebut the presumption that the City acted in good faith, as they fail to show any actual intent of Mr. Bhakta not to honor the contract. Rather, his answers demonstrate that the City intended to honor the contract under the normal circumstances it believed would continue to exist for the duration of the contract.

Davidson also infers that because the City sent a letter on February 7, 2020 asking Davidson to consider reducing its prices, the City intended to terminate its contract at the time of execution.  Davidson MSJ at 18.  The City's request in no way shows bad faith or an intent not to abide by the terms of the contract at the time of execution.  The February request does not threaten termination or, for that matter, even mention termination.  It simply asks Davidson to consider reducing its prices.  It is illogical for Davidson to assert that requesting a reduction of prices is a proof of bad faith on the City's part.

Moreover, the undisputed facts show that Davidson itself had requested a change in the contract a week before the City requested the price reduction.  The contact, as originally executed on January 21, 2020, provided that the City could terminate for convenience upon giving Davidson a 30-day notice of its intent to exercise the TFC.  Davidson MSJ at 3-4, ¶7 Sometime afterwards, Davidson contacted the city and asked for the TFC to be removed. *Id.* The City declined to delete the TFC entirely but agreed to extend the notice period from 30 to 60 days to which Davidson

agreed. *Id.* The contract was then reissued on January 30th. Defendant City of Albuquerque's Response to Plaintiff's Interrogatory Nos. 5, 11, and 12, Bates stamped documents 444-446. attached as **Exhibit F**. By doing this, Davidson acknowledged that it and the City believed that they could negotiate changes in terms of the contract based on events subsequent to its execution.

Davidson fails to acknowledge that significant world events occurred both before February 7, prompting the request for price modification, and afterwards, prompting the invocation of the TFC. *See* City's Response To Undisputed Material Facts, ¶ 19 (City's Response) Between the original issuance of the contact and the February 7 email, there was an unprecedented decline in oil prices, which lead the City's Chief Finical Officer to request a modification of prices from Davidson. Davidson's MSJ at 6, ¶ 17. Between February 7 and March 19, when the City gave notice of termination, a global pandemic erupted, causing nationwide shutdowns of businesses leading to an uncertainty in the revenue of the City especially gross receipts taxes generated by business sales of goods and services. **Exhibit B** at ¶¶ 11-16.

That these events occurred is undisputed, but Davidson ignores the impact they had on the City and how that impact supports the conclusion that the City did not enter into the contract intending not to abide by it. *See* City's Response ¶ 19. As discussed by Mr. Bhakta in his deposition, the City did not anticipate either the drop in oil prices or the pandemic. **Exhibit D** at 31:5-11. It was the drop in oil prices that prompted the February request. The City was not aware that oil prices would plummet to the extent they did. Since oil prices had not yet plunged at the time of execution of the contract, the City could not have intended to cancel the contract on that basis.

Furthermore, the February request to reduce the price of fuel and the termination of the contract are not directly connected. Economic instability caused by the pandemic led the City to

exercise the TFC. The facts show that the City became aware that the pandemic was likely to affect its ability to pay for services it had ordered from many vendors as businesses began to shut down across the country.  The City, as a consequence, adopted a roll-over budget when DFA issued a memorandum allowing local governments to work off a month-to-month budget based on the prior year budget. That prior year budget did not account for the contact with Davidson, a fact that was exacerbated by the City's predicted budget shortfall due to the likely severe reduction of gross receipts taxes in an environment where businesses where shuttered for an indefinite period. **Exhibit B** at ¶¶ 11-16. If the primary factor that influenced the City's decision to invoke the TFC was the budgetary uncertainty, and since that factor did not arise until March, it cannot serve as proof that the City did not intend to honor its contract at the time of execution.

2.      The City did not terminate the contract in bad faith.

Davidson also uses the same facts to argue that the City acted in bad faith at the time it exercised the TFC, alleging the City did so only to secure a better bargain from a competing supplier.  Davidson MSJ at 15, 17.  Davidson fails to support that assertion for the same reason as it fails to support its conclusion that the City never intended to honor its contract, as discussed above. The undisputed facts show that the City invoked the TFC not just to secure a better bargain but rather to ameliorate the predicted impact the COVID-19 pandemic was likely to have on its revenue resulting from the loss in gross receipts taxes. In fact, in addition to the contract with Davidson, the City took steps to minimize expenses by invoking the termination for convenience clause in several other contracts over the course of the pandemic. *See* **Exhibit C.**

As the Court is aware, the City has also moved for summary judgment.  Defendant's Motion For Summary Judgement and Supporting Memorandum, Doc 50, filed on 3/14/22.  The City contends that the undisputed material facts in this case demonstrate that it had every intention

to purchase its fuel from Davidson. The extraordinary change in circumstances was the reason that the City exercised the TFC, not a mere desire to secure a better bargain. Even if the Court finds that the facts do not entitle the City to summary judgment, Davidson cannot meet its burden to prove that the City did not intend to comply with the contract at the time that the contract was executed.

B.  There was a sufficient change in circumstance.

Davidson also argues that there is a secondary test to determine whether the City validly exercised the TFC; that is, there must be a sufficient change in circumstances for a termination for convenience clause to be invoked. Davidson MSJ at 19. That test, however, has been abandoned at the federal level, and it is unclear if it has been adopted by the New Mexico state courts. *See Mb Oil Ltd., Co.,* 2016-NMCA-090, ¶ 23. Regardless, the change in circumstances test applies when "the circumstances of the bargain or the expectations of the parties have changed sufficiently that the clause serves only to allocate risk," *id.* (quoting *Torncello v. United States*, 681 F.2d 756, 771 (Ct. Cl. 1982)), and Davidson has failed to establish that circumstances have not changed sufficiently to allow the City to terminate the contract.

The undisputed facts establish that circumstances drastically changed, altering both the circumstances of the bargain and the expectations of the parties.  But even if the material facts do not establish change in circumstances, at a minimum, Davidson has failed to show that there is no genuine issue as to change of circumstances and that there is an "an absence of evidence to support the nonmoving party's case." *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10 Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Davidson states that the City gives two reasons to justify its exercise of the TFC, the decline in oil prices and the COVID-19 pandemic. Davidson MSJ at 20. The City agrees that an unprecedented drop in prices and the outbreak of a pandemic occurred between the initial execution of the contract and the City's decision to exercise the TFC were driving forces in the City's decision to terminate the contract. Davidson asserts that the price uncertainty and pandemic combined still do not constitute a material change in circumstances because "the Contract itself anticipated market fluctuations." *Id.* However, the facts show that it was not only market fluctuations that lead the City to invoke the TFC, but also the pandemic that caused the City to have budgetary concerns resulting from the uncertainty of gross receipts taxes.  The City was forced to adopt the 2019-2020 budget on a month-to-month basis as its 2020-2021 budget.  The 2019-2020 budget did not take account of the Davidson contract as well as other contracts. Thus, the City invoked the TFC to mitigate the potential budget issues those contracts would have caused. The City made the decision to exercise the TFC as soon as it learned it had to revise its budget. Further, the City exercised the TFC to terminate other contracts for the same reason.  *See* **Exhibit C**.

Davidson claims that the City did not have to terminate the contract; that the City could have incurred fewer total fuel costs by purchasing less fuel.  Davidson MSJ at 21.  Since the contract was a requirements contract, Davidson contends that the City could have purchased less fuel than originally anticipated to reflect reduced bus ridership or use of other vehicles. *Id.* Davidson, however, does not understand the City's budgeting process. A drastic change caused by extraordinary events like the drop in oil prices and the COVID-19 pandemic required the City to review all its contracts and obligations to assure that it is able to meet essential services, like public safety, and other essential services.  *See* **Exhibit D** at 82:9-22.

The undisputed facts evidence that circumstances sufficiently changed so that, assuming the change in circumstances standard applies, the City satisfied that standard. In any case, Davidson has failed to establish that there is not a genuine dispute as to any material fact or that there is an absence of evidence to support the City's case.

## II. THE CITY DID NOT BREACH AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Davidson also accuses the City of breaching the implied covenant of good faith and fair dealing as a matter of law.  Davidson MSJ at 22-23. The implied covenant of good faith and fair dealing is not implicated for two (2) reasons:  First, the implied covenant cannot override an express termination clause in the contract.  Second, even if the implied covenant of good faith and fair dealing were to apply to the City's termination of the contract, the facts do not support that the City acted in bad faith when it exercised the TFC.  Just the opposite; the undisputed facts established that the City was acting in good faith when it terminated the contract between it and Davidson.

### A. The Implied Covenant Of Good Faith And Fair Dealing Does Not Override The TFC.

It is undisputed that the contract expressly gave the City the discretion to terminate the contract for convenience.  Davidson's MSJ, at 4, ¶ 11.  The contract also provides that it is governed by the laws of New Mexico.  Davidson's MSJ at 4, ¶ 12.  Although New Mexico courts have held that every contract includes the implied covenant of good faith and fair dealing, New Mexico courts have repeatedly stated that the implied covenant of good faith and fair dealing cannot overcome or negate an express term of a contract. *Melnick v. State Farm Mut. Auto Ins. Co.*, 1988-NMSC-012, ¶ 17, 106 NM 726, 749 P.2d 1105 ("We align also with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated written contract."); *see Mb Oil Ltd.,* 2016-

NMCA-090, ¶¶ 12-16, *Continental Potash, Inc. v. Freeport McMoran*, *Inc.*, 1993 NMSA-039, ¶ 67, 116 N.M. 690, 858 P.2d 66; *see also, In Borges,* 485 B.R. 743, 778-779 (D.N.M. 2019) (after stating that "the New Mexico Supreme Court has discussed, in considerable detail,  the implied covenant of good faith and fair dealing in contract law," the court added, "Importantly, the implied covenant of good faith and fair dealing cannot be used to overcome or negate an express term contained within a contract." *(citing Cont'l Potash, Inc,* 1993 NMSA-039, and *Melnick*, 1988-NMSC-012*))*.  This principal that the implied covenant cannot override an express term of a contract applies when one party to a contract has the expressed discretion to terminate a contract without cause, including a TFC. *Mb Oil, Ltd.,* 2016-NMCA-090, ¶ 13.  This court recognized as much in its Memorandum Opinion and Order, after referring to New Mexico court decisions providing that the implied covenant of good faith and fair dealing cannot override an express term of contract, concluded "for now, however, the claim will remain," Memorandum Opinion and Order, Doc. 15, p. 14, filed on 06/23/2021.

B. Even Assuming That The Implied Covenant Of Good Faith And Fair Dealing Applies, The Facts Do Not Support That The City Breached The Implied Covenant.

The essence of the implied covenant of good faith and fair dealing is that a party to the contract must not wrongfully withhold the benefit of the contract to be enjoyed by the other party. *In re Borges,* 485 B.R. at 779 (citing *Paiz v. State Farm Fire and Car Co*., 1994-NMSC-079, ¶ 31, 118 NM 203, 212-213, 880 P.2d 300, 309-310.) "[T]he implied covenant of good faith and fair dealing protects only against bad faith wrongful and intentional." *Paiz*, 1994- NMSC-079, ¶ 31.

Whether the City acted in bad faith in violation of the implied covenant of good faith and fair dealing raises the same issue concerning whether the City exercised the TFC in bad faith, discussed above.  *See s*upra *at 11-12* Davidson argues the same facts for its allegations that the City breached the implied covenant of good faith and fair dealing as it does for its allegation that

the City exercised the TFC in bad faith.  *Compare* Davidson's, MSJ at 14-19, *with* 22-23.  The undisputed facts, however, establish that the City did not act in bad faith when it entered into the contract with Davidson or when its exercised the TFC.  At a minimum, Davidson has not met its burden of showing there is no issue of genuine dispute as to material facts, or that there is an absence of proof to support Davison's case.  "Whether the implied covenant was breached is a question of act that focused on the contract and what was agreed to" *In re Borges*, 485 B.R. at 779 (citing *Gilmore v. Dubustadt,* 1998-NMCA-086, ¶ 24, 125 N.M. 330, 961 P.2d 175.).

### III. EVEN IF THE CITY'S EXERCISE OF THE TFC CONSTITUTED A BREACH OF CONTRACT, THE FACTS DO NOT SUPPORT DAVIDSON'S DAMAGES CLAIM

Davidson prays for damages totaling $776,871.60, comprised of (i) lost anticipated profits on fuel sales to the City in the amount of $107,567.04; (ii) lost fuel delivery profits in the amount of $53,561.68; (iii) loses on hedge contracts in the amount of $601,858.99; and (iv) additional interest paid on a line of credit in the amount of $13,883.89.  Davidson MSJ at 10, ¶ 33.  Davidson claims that these losses are its expectation damages to which it is entitled.  Davidson's MSJ at 24-26.

The City does not dispute that if it breached its contract with Davison when it exercised the TFC, it would be liable for Davidson's expectation damages.  The City, however, does dispute that Davidson has met its burden to show that no genuine issue exists that its requested damages are, in fact, its expectancy damages.

Davidson calculated its alleged damages for lost profits by multiplying the quantity of fuel the City would have purchased by the profit margin on its fuel sales and fuel delivery to the City.  Davidson calculated that it would earn two (2) cents a gallon on fuel sales and $88.59 for each load of fuel delivered (consisting of 8,500 gallons per load).  Davidson MSJ at 9, ¶ 30.  Davidson

then asserts that it would have sold 448,256 gallons of fuel (293,079 gallons of diesel fuel and 115,117 gallons of unleaded gasoline) to the City had it not terminated the contract by exercising the TFC. *Id*. Davidson projected the quantity of fuel from historical figures the City provided prospective bidders in the RFB. *Id*. Those figures represented fuel purchases by the City for years prior to the fall in oil prices and the COVID-19 pandemic.

The City, however, would not have purchased that quantity of fuel at the contract prices after the decrease in oil prices and the COVID-19 pandemic. The City had to take austerity measures to ensure it would not have a budget shortfall during the uncertainty caused by the pandemic. It would have purchased far less fuel at those higher prices. Davidson's profits, therefore, would have been lower, or it would have suffered losses. It is incumbent, then, for Davidson to show what quantity the City would have purchased at the contract prices, which it has failed to do.

Similarly, even if the City had not terminated the contract and had purchased less fuel than the RFB estimates, Davidson still might have suffered hedging losses. Davidson hedging contracts anticipated that the City would purchase fuel based on quantities detailed in the RFB. If the City used less fuel, losses suffered by Davidson would not have been caused by an alleged breach of contract but would have been losses for which Davidson assumed the risk. Davidson, however, does not show what those losses would have been. Proof of expectancy damages requires that Davidson reasonably prove its damages, assuming the contract had been breached, which Davidson has failed to do.

**IV. <u>DAVIDSON IS NOT ENTITLED TO ITS COSTS OF ITS HEDGING POSITION</u>.**

Davidson poses an alternative argument for damages. It asserts that if the Court does not grant it summary judgment for breach of contract or breach of the implied warranty of good faith

and fair dealing, the City breached the TFC for not compensating it for the loss on its hedge contracts ($601,858.99), plus interest ($13,883.89) incurred because it had to draw on its line of credit to service the hedge contracts.  Davidson MSJ at 8, ¶ 29; 26-27.  Davidson, however, is not entitled to recover that loss, and interest, under the plain meaning of the contract.  But, even if Davidson were entitled to recover the hedging loss and interest under the TFC, Davidson has failed to establish that there is no genuine issue as to the actual amount of loss it suffered because of the alleged breach of the TFC.

The TFC provides:

City may terminate the contract at any time giving at least sixty (60) days written notice to the vendor.  In such event, vendor shall be paid under the terms of the Contract *for all goods and/or services provided to and accepted by the City, if ordered or accepted by the City prior to the effective date of termination.*

**Exhibit B** at ¶ 11 (emphasis added). Interpretation of a contract is a question of law.  *Bauer v. College of Santa Fe*, 2003-NMCA-121, ¶ 2, 134 N.M. 439, 78 P.3d 78. In interpretating a contract, the terms of the contract must be given their plain meaning.  *Horanberg v. Felter*, 2004-NMCA-121, ¶ 11, 136 N.M. 435, 99 P.3d. 685.  The words of the TFC are unambiguous; Davidson must have provided the City goods or services – which it did not.  Even if Davidson provided the City goods or services, the City must have accepted them – which, obviously, the City did not.

The purpose of the term in the TFC, allowing a vendor to recover for goods or services delivered to and accepted by the City, is to prevent unjust enrichment.  Otherwise, the City could assert it is not liable for those goods or services under the doctrine of sovereign immunity. *See* NMSA, 1978 § 37-1-23(A) (1976), *Quarrie v. N.M. Inst. Of Mining & Tech.,* 2021-NMCA-044, ¶ 9, 495 P.3d 645. The language permitting a vendor to recover for goods and service delivered

and accepted is in fact a waiver of sovereign immunity.  The City should not be allowed to benefit from goods or services it has received before it terminated the contract without paying for those goods or services.  Here, however, the City did not receive any goods or services from Davidson's acquisition of the hedge contacts. Davidson, in fact, is attempting to recover pure reliance costs, the loss of which was a risk Davidson assumed.

## **CONCLUSION**

Davidson has not met its burden in seeking summary judgment, and in fact the undisputed facts show that summary judgment should be granted to the City.   The City, therefore, respectfully requests that the Court deny Davidson's Motion For Summary, grant City's Motion for Summary Judgment, dismiss Plaintiff's case in its entirety, and grant such other relief as this Court deems proper.

Respectfully submitted,

SANCHEZ, MOWRER & DESIDERIO, P.C.

By:     */s/ Robert J. Desiderio*_____
        Robert J. Desiderio
        Janette Angelica Duran
        Erin S. Ferreira
        Post Office Box 1996
        Albuquerque, NM 87103
        T: 505-247-4321
        F: 505-247-4441
        jaduran@smdlegal.com
        rjdesiderio@smdlegal.com
        erin@smdlegal.com

        CITY OF ALBUQUERQUE
        Esteban A. Aguilar Jr., City Attorney

        */s/ John E. DuBois*_____
        John E. DuBois
        Assistant City Attorney

19

Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500/F: (505) 768-4525
jdubois@cabq.gov
dking@cabq.gov

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of April, 2022, I served a copy of the foregoing pleading to the parties listed below through the Court's case management and electronic filing system ("CM-ECF").

Ross L. Crown
Lewis Roca Rothgerber Christie LLP
201 3rd St NW, Suite 500
Albuquerque, NM 87102-3366
505.764.5402
rcrown@lrrc.com

Respectfully submitted,

SANCHEZ, MOWRER & DESIDERIO, P.C.

By:     */s/ Janette Angelica Duran*
        Janette Angelica Duran
        Robert J. Desiderio
        Erin S. Ferreira
        Post Office Box 1996
        Albuquerque, NM 87103
        T: 505-247-4321
        F: 505-247-4441
        jaduran@smdlegal.com
        rjdesiderio@smdlegal.com
        erin@smdlegal.com


        CITY OF ALBUQUERQUE
        Esteban A. Aguilar Jr., City Attorney

        John E. DuBois
        Assistant City Attorney
        Devon P. King
        Managing Assistant City Attorney
        P.O. Box 2248
        Albuquerque, New Mexico 87103
        (505) 768-4500/F: (505) 768-4525
        jdubois@cabq.gov
        dking@cabq.gov

        *Attorneys for Defendant*