**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DAVIDSON OIL COMPANY,**

      **Plaintiff,**

**vs.**                                **Case No. 1:20-CV-00838-RB-JHR**

**CITY OF ALBUQUERQUE,**

      **Defendant.**

---

**PLAINTIFF DAVIDSON OIL COMPANY'S RESPONSE IN OPPOSITION
TO DEFENDANT CITY OF ALBUQUERQUE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO DAMAGES**

---

Ross L. Crown
Lewis Roca Rothgerber Christie LLP
201 Third Street NW, Suite 500
Albuquerque, New Mexico 87103-1027
(505) 764-5402

Attorneys for Plaintiff Davidson Oil Company

117386912.2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.    RESPONSE TO CITY'S STATEMENT OF UNDISPUTED MATERIAL FACTS ........ 1

II.   DAVIDSON OIL'S STATEMENT OF UNDISPUTED MATERIAL
      FACTS .................................................................................................................. 4

III. ARGUMENT ............................................................................................................ 11

      A.    Damages Sustained by Davidson Oil .................................................... 11

      B.    City Cannot Show Davidson Oil's Lost Profits Are Speculative ......... 14

      C.    City Cannot Show Davidson Oil's Hedge Losses Are Not   Recoverable .......... 18

IV. CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

## New Mexico Cases

*Camino Real Mobile Home Park v. Wolfe*,
    1995-NMSC-013, 891 P.2d 1190 ..................................................................................12

*First National Bank in Albuquerque v. Sanchez*,
    1991-NMSC-065, 815 P.2d 613 ....................................................................................18

*Horizon Well Serv., LLC v. Pemco of N.M., LLC*,
    No. A-1-CA-36742, 2020 WL 4260396 (July 20, 2020).............................................17

*Nosker v. W. Farm Bureau Mut. Ins. Co.*,
    1970-NMSC-046, 466 P.2d 866 ....................................................................................17

*Ranchers Exploration and Dev. Corp. v. Miles*,
    1985-NMSC-019, 696 P.2d 475 ........................................................................12, 17, 18

*Strata Prod. Co. v. Mercury Expl. Co.*,
    1996-NMSC-016, 121 N.M. 622, 916 P.2d 822 ...........................................................15

*Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*,
    2013-NMSC-017, 301 P.3d 387 ........................................................................12, 17, 19

*Unified Contractor, Inc. v. Albuquerque Hous. Auth.*,
    2017-NMCA-060, 400 P.3d 290.....................................................................................17

## Non-New Mexico Cases

*Cal. Fed. Bank, FSB v. United States*,
    245 F.3d 1342 (Fed. Cir. 2001)......................................................................................15

*Cleek Aviation v. United States*,
    19 Cl. Ct. 552 (1990) ...............................................................................................16, 17

## Rules

Fed. R. Civ. P. 56(c)(1)(A) ..................................................................................................2, 4

## Other Authorities

NM UJI-Civ. § 13-843...........................................................................................................12

NM UJI-Civ. § 13-852...........................................................................................................12

Restatement (Second) of Contracts § 351 (1981)..................................................................19

24 Williston on Contracts § 64:4 (4th ed.)............................................................................11

Plaintiff Davidson Oil Company opposes Defendant City of Albuquerque's motion for partial summary judgment on damages.[1] The City contends that, as a matter of law, Davidson Oil cannot recover anything but nominal damages in this action. As demonstrated by this response however, the City is mistaken as to the material facts and applicable law, and the motion should be denied.

Davidson Oil entered into a fixed price contract by which the company would exclusively supply all of the fuel requirements of the City of Albuquerque (hereinafter, the "Contract"). As the City expected, to guarantee its ability to deliver fuel at the fixed prices called for by the Contract, Davidson Oil promptly hedged its position by purchasing hedge contracts at prices pegged just below the contract prices. Following a decline in world oil prices and before Davidson Oil could even commence deliveries of fuel, the City terminated the contract for convenience solely to seek better pricing from another vendor. As a result of this termination, Davidson Oil lost money on its hedge as well as the opportunity to earn expected profits on the Contract. The City refuses to compensate Davidson Oil for these losses.

In this action, Davidson Oil asks to be placed in the same position it would have been had the City not breached the contract. The company seeks standard contract damages that with reasonable certainty occurred and in an amount reasonably ascertained.[2]

## I. RESPONSE TO CITY'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Davidson Oil responds to the City's statement of undisputed material facts in its motion for partial summary judgment as follows:

---

[1] Defendant's Motion for Partial Summary Judgment as to Damages and Supporting Memorandum filed March 14, 2022, Document 49.

[2] *See also* Davidson Oil's Motion for Summary Judgment filed March 14, 2022, Document 53.

**City Fact 1**:  Davidson Oil admits the City's Fact 1.

**City Fact 2**:  Davidson Oil admits the City's Fact 2.

**City Fact 3**:  Davidson Oil admits the City's Fact 3.

**City Fact 4**:  Davidson Oil denies the City's Fact 4 because the Contract provided for a 2-year base period, plus two 1-year options to renew. The first year of the base period ran from July 1, 2020 to June 30, 2021. *See* Affidavit of Chan Davidson ("Davidson Aff."), Document 53-1, ¶ 7 and Contract, Document 53-4, at 1.

**City Fact 5**:  Davidson Oil denies the City's Fact 5 because the Contract is exclusive. This exclusivity is provided for by the terms of the Contract. Moreover, as a requirements contract, the Contract is exclusive as a matter of law. *See* Section III(B), *infra. See also* Davidson Oil Fact 4.

**City Fact 6**:  Davidson Oil admits the City's Fact 6 but clarifies that, although the Contract did not require the City to order any set amount of fuel from Davidson Oil, it did require the City to purchase all of its fuel requirements from the City. Davidson Aff., Document 53-1, ¶ 4 and Addendum #1 to Request for Bids (RFB), Document 53-3, at 122.

**City Fact 7**:  Davidson Oil admits the City's Fact 7.

**City Fact 8**:  Contrary to Fed. R. Civ. P. 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 8. Davidson Oil denies this alleged fact to the extent it is intended to suggest that Davidson Oil's purchase of hedge contracts was not in accordance with the Contract. Davidson Aff., Document 53-1, ¶ 4 and Addendum #1, Document 53-3, at 121-123.

**City Fact 9**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 9. Davidson Oil admits this fact except that the termination of the Contract became effective on May 19, 2020, not April 19, 2020. Davidson Aff., Document 53-1, ¶ 14 and e-mail dated March 19, 2020, Document 53-6; City's Answer to Interrogatory No. 8, Document 53-10.

**City Fact 10**:   Davidson Oil admits the City's Fact 10.

**City Fact 11**:   Davidson Oil denies the City's Fact 11. The deposition testimony by Jayson Boydstun cited by the City in support of this fact indicates that Davidson Oil anticipated fuel profits of $107,567 and freight profits of $62,154, and that Davidson Oil presented total damages of $785,464. These figures have been adjusted slightly downward since Mr. Boydstun testified. *See* Davidson Oil Facts 30-33, *infra.*

**City Fact 12**:   Davidson Oil admits the City's Fact 12 but clarifies that the estimated fuel volumes it used to calculate anticipated profits were provided to prospective bidders by the City. *See* Davidson Aff., Document 53-1, ¶¶ 22 & 23 and Calculation of Damages, Document 53-9.

**City Fact 13**:   Davidson Oil admits the City's Fact 13.

**City Fact 14**:   Davidson Oil admits the City's Fact 14, but it is immaterial to this case. *See* Section III(B), *infra*

**City Fact 15**:   Davidson Oil admits the City's Fact 15.

**City Fact 16**:   Davidson Oil denies the City's Fact 16. The City informed prospective bidders in Addendum #1 to the RFB that "[i]t is the City's belief that the bidder should have its supplies already hedged in such a way, or the ability to hedge the volumes stated in the RFB, to permit it to offer a fixed price at the close date." Davidson Aff., Document 53-1, ¶ 3 and Addendum #1 to RFB, Document 53-3, at 121.

**City Fact 17**:   Davidson Oil admits the City's Fact 17.

**City Fact 18**:   Davidson Oil admits the City's Fact 18, but it is immaterial to this case. *See* Section III(B), *infra.*

**City Fact 19**:   Davidson Oil admits the City's Fact 19, but it is immaterial to this case. *See* Section III(B), *infra.*

**City Fact 20**:   The City's Fact 20 is not a fact at all but simply speculation without an evidentiary basis. This alleged fact is also immaterial to this case.

**City Fact 21**:   For the purpose of the present motion, Davidson Oil does not dispute the City's Fact 21, but it is immaterial to this case.

**City Fact 22**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 22. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 23**:   The City's Fact 23 is not a fact at all but simply speculation (as the City concedes) without an evidentiary basis. This alleged fact is also immaterial to this case.

**City Fact 24**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 24. Davidson Oil disputes this fact as speculative. It is aware of no evidence demonstrating that the City's purchase of less fuel during fiscal year 2021 was due in whole or even in part to the pandemic. Moreover, this alleged fact is immaterial to this case.

**City Fact 25**:   Davidson Oil denies the City's Fact 25 because it does not explain how the City calculated its fuel savings.

## II.  DAVIDSON OIL'S STATEMENT OF UNDISPUTED MATERIAL FACTS

The following undisputed material facts are relevant to the issues raised by the City and should be considered in response to the motion for partial summary judgment.

**Davidson Oil Fact 1**:   On or about December 16, 2019, the City of Albuquerque issued Request for Bids No. RFB0091C for the purchase and delivery of diesel fuel and unleaded gasoline. Among other things, the RFB indicated that the City "plans to award one firm fixed price agreement under this RFB."  Estimated usage of fuel was listed by fuel type in Appendix A to the RFB. The City cautioned bidders that it "does not intend these estimates to be bulk orders [it] shall order only

4

in quantities and types needed." *See* Affidavit of Chan Davidson (hereinafter "Davidson Aff."),
Document 53-1, ¶ 3 and the RFB, Document 53-2, at 1 & 6.

**Davidson Oil Fact 2**:   On or about January 7, 2020, the City issued Addendum #1 to the
RFB. The addendum recites that its purpose "is to respond to questions that were timely submitted
by potential offerors..." Davidson Aff., Document 53-1,  ¶ 4 and Addendum #1, Document 53-3,  at
121.

**Davidson Oil Fact 3**:   Addendum #1 included the following questions and answers
concerning the fixed price nature of the fuel supply contract and price hedging by bidders:

> (1)  Is OPIS based pricing allowed, or must it be a fixed firm price?
>
> **Answer:** The City is only interested in a firm fixed price.
>
> (4)   Will the City consider a differential to be added to NYMEX at
> the time of award to allow for market fluctuation?
>
> **Answer:**  No. *It is the City's belief that the bidder should have its
> supplies already hedged in such a way, or the ability to hedge the
> volumes stated in the RFB, to permit it to offer a fixed price at the
> close date.* [Emphasis added].
>
> (12)   Will the City allow for NYMEX adjustments after award?
>
> **Answer:** No. This is for a firm fixed price agreement.
>
> (27)   Is the bid for one fixed-price per-gallon for each product for the
> entire year? Are you looking for one price that will not change with
> the market price of fuel?
>
> **Answer:** Yes, the City is requesting a firm fixed price per gallon
> delivered to various City sites.
>
> (28)   When quoting our price per gallon on the quote form, where do
> we notate the rak [*sic*] or base price per gallon that changes every day?
>
> **Answer:** The City will not take into consideration pricing that will
> fluctuate daily. The intent of this bid [*sic*] is for a firm fixed price for
> the term of the agreement as stated in the RFB.

Davidson Aff., Document 53-1, ¶ 4 and Addendum #1, Document 53-3, at 121-123.

**Davidson Oil Fact 4**:   Addendum #1 included the following questions and answers concerning the exclusive nature of the fuel supply contract:

> (7)  Will the City purchase from any vendor, other than the awarded vendor during the life of the contract?
>
> **Answer:** The City's intent is to award one vendor that can meet the needs of the City's fuel usage.
>
> (13)   Will the City award Gas and ULSD to the same vendor or will the City split awards between Gas and ULSD?
>
> **Answer:**  The City will award one vendor that is able to supply all the fuel required.
>
> (25)   Why did the City move from a Vendor Pool purchasing fuel from multiple vendors, to a contract with one fuel vendor?
>
> **Answer:** The City believes it's in its best interest to purchase fuel for various needs from one supplier. The City has an obligation to seek all ways in which cost effectiveness is of the utmost priority to obtain, and be sustained throughout the duration of any contracts being executed.

Davidson Aff., Document 53-1, ¶ 4 and Addendum # 1, Document 53-3, at 121-123.

**Davidson Oil Fact 5**:   Following submission and acceptance of Davidson Oil's best and final prices, on or about January 21, 2020, the City and Davidson Oil entered into Contract No. SHR000022076.  Davidson Aff., Document 53-1, ¶¶ 6 & 7 and Contract, Document 53-4.

**Davidson Oil Fact 6**:   The Contract provides that it "is governed by the laws of the State of New Mexico and the City of Albuquerque."  Davidson Aff., Document 53-1, ¶ 7, and Contract, Document 53-4, at 7.

**Davidson Oil Fact 7**:   Having committed to fixed prices for fuel for a one-year period, Davidson Oil needed to ensure it would have the ability to sell fuel to the City at the agreed prices regardless of market fluctuations. To do so, on January 31, 2020, Davidson Oil purchased hedge contracts. By entering into hedge contracts Davidson Oil was able to guarantee that no matter the

market price, it would have the money to buy diesel fuel and unleaded gasoline at prices less than the fixed prices called for during the first year of the Contract.   Davidson Aff., Document 53-1, ¶ 8.

**Davidson Oil Fact 8**:   The hedge contracts purchased by Davidson Oil were a type of derivative instruments known as "swap contracts." The company agreed with the party on the other side of the hedge to swap a floating market price for diesel fuel and unleaded gasoline in exchange for fixed prices. As derivative instruments, the hedge contracts did not involve the actual purchase of fuel.  Instead, the parties traded financial positions.  Davidson Aff., Document 53-1, ¶ 9.

**Davidson Oil Fact 9**:   The prices of the hedge contracts were locked-in as of the date of purchase, January 31, 2020. These prices were pegged just slightly below the fixed prices called for by the Contract with the City, allowing Davidson Oil a profit margin of $0.02 per gallon. The hedge contracts were in equal quantity lots of 12 one-month agreements. These instruments corresponded to each month of the first year of the Contract, beginning in July 2020 and concluding in June 2021. Davidson Aff., 53-1, ¶ 10.

**Davidson Oil Fact 10**:   The way the hedge contracts were designed, at the end of each one-month contract, Davidson Oil would be required to "settle" the financial obligations with the other party to the hedge. If market prices for fuel rose above the prices of the hedge contract, the other party would be obligated to pay Davidson Oil the difference between the hedge prices and the higher market prices. Thus, if market prices increased, Davidson Oil would still have the money to buy the fuel required by the City. On the other hand, if market prices for fuel fell below the hedge prices, then Davidson Oil would be obligated to pay the other party the difference between the hedge prices and the lower market prices. In this latter circumstance however, Davidson Oil would be protected from loss because it was entitled to sell fuel to the City at the fixed prices called for by the Contract, which were slightly higher than the hedge prices. Thus, revenues from sales to the City would cover

any monthly losses on the hedge contracts and further allow Davidson Oil to realize a modest profit on these sales. Davidson Aff., Document 53-1, ¶ 11.

**Davidson Oil Fact 11**:   By e-mail dated March 19, 2020, the City provided notice to Davidson Oil of its intent to terminate the Contract effective May 19, 2020 pursuant to the Termination for Convenience (TFC) clause. The notice of termination provided no reason for the termination. In subsequent written discovery in this case, the City recited its reason for termination was the decline in oil prices combined with the uncertainty created by the COVID-19 pandemic. Davidson Aff., 53-1, ¶ 14 and e-mail dated March 19, 2020, Document 53-6; City's Answer to Interrogatory No. 8, Document 53-10.

**Davidson Oil Fact 12**:   Prices in the world oil market are volatile. The events leading to the filing of Davidson Oil's lawsuit against the City began with a dramatic decline in world oil prices in January 2020. This decline bottomed out in April 2020 and thereafter oil prices generally rallied until mid-November 2020 when prices began a steady increase that continued throughout 2021 and into 2022. In late February 2022, following Russia's invasion of Ukraine, oil prices accelerated upwards. Davidson Aff., Document 53-1, ¶ 27.

**Davidson Oil Fact 13**:   As a result of the termination of the Contract, Davidson Oil incurred damages. These damages consisted of losses sustained on its hedge contracts, additional interest paid on its line of credit, lost profits on sales of fuel, and lost profits on transport of fuel. Davidson Aff., Document 53-1, ¶ 17.

**Davidson Oil Fact 14**:   Following termination of the Contract, Davidson Oil remained obligated on its hedge contracts, but the company was left with no place to sell fuel at the fixed prices it had agreed to with the City in the Contract. Consequently, Davidson Oil could not offset the losses it sustained at the end of each month in which the market prices of diesel fuel and unleaded gasoline were less than the hedge prices for these fuels.  Davidson Aff., Document 53-1, ¶ 18.

**Davidson Oil Fact 15**:   As oil prices continued to decline, Davidson Oil realized a loss on its hedge contracts at the end of each month from July 2020 through January 2021. These losses totaled $1,226,356.65. When oil prices began to turn around, Davidson Oil realized a gain on its hedge contracts at the end of each month from February 2021 through the end of its last hedge contract in June 2021. These gains totaled $624,497.66. Davidson Aff., Document 53-1, ¶ 19.

**Davidson Oil Fact 16**:   As a result of the monthly settlements under the hedge contracts, Davidson Oil ended-up realizing a net loss on these hedge contracts in the amount of $601,858.99 ($1,226,356.65 minus $624,497.66). These monthly losses and gains on the hedge contracts, and this net loss are shown in the calculation of Davidson Oil's damages**.** Davidson Aff., Document 53-1, ¶ 20 and Calculation of Damages, Document 53-9.

**Davidson Oil Fact 17**:   The $1,226,356.65 in losses incurred by Davidson Oil on its hedge contracts each month from July 2020 through January 2021 had to be settled with cash. These payments created a substantial drain on the company's cash flow. To satisfy the company's cash requirements during the latter half of 2020, it requested its lender, Amarillo National Bank, to increase Davidson Oil's line of credit by $1 million. The bank did so. This increase in the company's borrowings caused Davidson Oil to incur additional interest payments in the amount of $13,883.89. These additional interest expenses are shown in the calculation of Davidson Oil's damages. Davidson Aff., Document 53-1, ¶ 21 and Calculation of Damages, Document 53-9.

**Davidson Oil Fact 18**:   The fixed prices for fuel that Davidson Oil proposed in its best and final offer and accepted by the City included a profit margin of $0.02 per gallon. In the RFB, the City provided prospective bidders with figures showing its historical usage of diesel fuel and unleaded gasoline. Based on these historical figures, Davidson Oil projected it would deliver to the City during the first year of the Contract 293,079 gallons of diesel fuel and 155,117 gallons of

unleaded gasoline. If the City had permitted Davidson Oil to perform the first year of the Contract, the company expected to realize a profit of $107,567.04 on fuel sales. A calculation of these lost profits is shown in the calculation of Davidson Oil's damages. Davidson Aff., Document 53-1, ¶ 22 and Calculation of Damages, Document 53-9.

**Davidson Oil Fact 19**:   The Contract called for Davidson Oil to deliver the fuel it sold to the City. Based on the figures for historical fuel usage the City provided to prospective bidders in the RFB, Davidson Oil estimated that it would deliver 469 loads of diesel fuel (consisting of 7,500 gallons per load) and 233 loads of unleaded gasoline (consisting of 8,500 gallons per load). Davidson Oil priced the Contract with a profit per load of fuel of $88.59. If the City had permitted Davidson Oil to perform the first year of the Contract, the company expected to realize freight profits of $62,154.91. Davidson Aff., Document 53-1, ¶ 23.

**Davidson Oil Fact 20**:   After the Contract was terminated, the City contracted for fuel with a replacement supplier, Truman Arnold Company (TAC). These purchases were pursuant to a State of New Mexico Statewide Purchasing Agreement. The Statewide Purchasing Agreement was tied to market prices. Affidavit of Christopher Daniel, City of Albuquerque Chief Investment Officer, Document 49-4, ¶ 15; Excerpts of Deposition of Sanjay Bhakta attached hereto as **Exhibit 1**, at 60-61, lns. 18 – 25.

**Davidson Oil Fact 21**: After TAC became the City's new fuel supplier, TAC asked Davidson Oil to transport to the City a portion of this fuel. As a result, Davidson Oil earned a profit of $8,593.23 on fuel deliveries to the City made at the request of TAC. Deducting the profits realized by Davidson Oil on deliveries for TAC, the company lost a net of $53,561.68 in freight profits it expected to earn during the first year of the Contract. A description of these lost profits is shown in

the calculation of Davidson Oil's damages. Davidson Aff., Document 53-1, ¶ 24 and Calculation of Damages, Document 53-9.

      **Davidson Oil Fact 22**:   In summary, the damages sustained by Davidson Oil resulting from the City's termination of the Contract consist of the following:

        (a)   Direct losses on hedge contracts: $601,858.99

        (b)   Additional interest paid on line of credit: $13,883.89.

        (c)   Loss of anticipated profits on fuel sales: $107,567.04

        (d)   Loss of anticipated fuel delivery profits: $53,561.68

**TOTAL: $776,871.60**

Davidson Aff., Document 53-1, ¶ 25 and Calculation of Damages, Document 53-9.

      **Davidson Oil Fact 23**:   The City has refused to compensate Davidson Oil for the damages it has sustained as a result of the termination of the Contract. Davidson Aff., Document 53-1, ¶ 26.

### III. ARGUMENT

      Based on the undisputed facts of this case, there is no basis for the Court to grant the motion for partial summary judgment and, as a matter of law, exclude recovery of all but nominal damages by Davidson Oil from the City of Albuquerque.

#### A. <u>Damages Sustained by Davidson Oil</u>

      The City's exercise of the Termination for Convenience clause constituted a breach of contract, and based on that breach, Davidson Oil is entitled to recover expectation damages for the profit it expected to earn during the first year had the Contract not been breached. Davidson Oil may also recover as reliance damages the costs it incurred in preparing to perform the Contract.

      As a matter of hornbook law, a party injured by a breach of contract may seek both expectation damages resulting from the alleged breach and reliance damages. *See, e.g.*, 24 Williston

11

on Contracts § 64:4 (4th ed.) ("… courts will allow the recovery of both expectation and reliance damages, because the compensation principle that underlies the recovery of damages by the victim of a breach requires both an assessment of the gains prevented as well as the losses proximately caused by the breach.")

These measures of contract damages are recognized in New Mexico.  In an action for breach of contract, the party who fails to perform the agreement is justly responsible for all damages flowing naturally from the breach. *Camino Real Mobile Home Park v. Wolfe*, 1995-NMSC-013, ¶ 20, 891 P.2d 1190, 1197, *overruled in part on other grounds by*, *Sunnyland Farms v. Cent. N.M. Coop., Inc.,* 2013-NMSC-017, 301 P.3d 387. "[D]amages awarded for breach of contract must be the amount of money that will place [claimant] in the position [it] would have been in if the contract had been performed." NM UJI-Civ. § 13-843. Where profit is the inducement to making a contract, damages for lost profits are allowed if proven. *Ranchers Exploration and Dev. Corp. v. Miles,* 1985-NMSC-019, ¶ 5, 696 P.2d 475, 477; *see also*, *Camino Real Mobile Home Park*, ¶ 32.  Contract damages may also include reliance damages, which are defined as "[t]he reasonable cost to [claimant] of having relied on the contract, less any loss which [claimant] would have sustained had the contract been fully performed." *Id.* § 13-852.

Davidson Oil seeks to be put in the same place it would have been in but for the City's breach, which is exactly what the law contemplates. To do so, Davidson Oil must recover (1) the profits it failed to realize due to the City's breach and (2) the losses it incurred in obtaining the hedge contracts necessary to perform.

If the City had not breached the Contract, Davidson Oil could reasonably have expected to realize a profit on its fuel sales. The company's bid included a profit margin of $0.02 per gallon.

Multiplying this rate of profit by the quantities of fuel the City estimated it would require during the first year of the Contract results in lost profits of $107,567.04. Davidson Oil Fact 18.

Also, if the contract had not been breached, Davidson Oil reasonably expected to earn profits for transporting the fuel purchased by the City. Davidson Oil Fact 19. Davidson Oil priced the Contract to include a profit per load of fuel of $88.59. *Id*. Based on the fuel requirement estimates provided by the City, these profits would have totaled $62,154.91. *Id.* Davidson Oil was able to offset a fraction of these lost profits by providing fuel transport services to the replacement fuel supply vendor, TAC. Davidson Oil Fact 21. Subtracting the profits on these deliveries from the gross figure results in lost net profits of $53,561.68. *Id.*

Davidson Oil's reliance damages arise from its purchase of hedge contracts based on the City's agreement to pay the fixed prices for fuel oil set forth in the Contract. Davidson Oil Facts 7 - 9. When oil prices fell and the City terminated the Contract, Davidson Oil remained obligated on its hedge contracts. Davidson Oil Fact 14. Consequently, it could not offset with sales to the City the losses it sustained at the end of each month in which the market prices for fuel were less than the hedge prices. Davidson Oil Facts 10 & 14.  Although market prices rose above the hedge prices in early 2021, Davidson Oil still sustained a net loss of $601,858.99 on its hedge contracts. Davidson Oil Facts 15 & 16.

Davidson Oil also incurred additional interest expenses due to the City's breach of contract. The company incurred losses of $1,226,356.65 on its hedge contracts each month from July 2020 through January 2021 that had to be settled with cash. Davidson Oil Fact 17. These payments created a substantial drain on the company's cash flow. *Id.* To satisfy the company's cash requirements during this period, at Davidson Oil's request, its bank increased the company's line of credit by $1

million. *Id.* This increase in the company's borrowings caused Davidson Oil to incur additional interest payments in the amount of $13,883.89. *Id.*

In summary, Davidson Oil's damages consist of (a) direct losses on its hedge contracts of $601,858.99, (b) additional interest paid on line of credit of $13,883.89, (c) loss of anticipated profits on fuel sales of $107,567.04, and (d) loss of anticipated fuel transport profits of $53,561.68. Davidson Oil Fact 22. These damages total $776,871.60. *Id.* The City has refused to compensate Davidson Oil for its damages. Davidson Oil Fact 23.

Significantly, the City touts savings of $800,000, net of its own hedging costs, as a result of terminating the Contract. City Fact 25. It is worth noting that this alleged savings approximates the $776,871.60 in damages sustained by Davidson Oil. Viewed together, these figures appear to confirm that the City's gain resulted from the City shifting losses onto Davidson Oil.

### B. City Cannot Show Davidson Oil's Lost Profits Are Speculative

In seeking partial summary judgment, the City first challenges Davidson Oil's damages for lost profits on fuel sales and transport. Motion at 8-11. The City alleges that Davidson Oil has failed to make a showing that these damages occurred because its calculation of lost profits is not mathematically precise. According to the City, Davidson Oil cannot recover lost profits based on the estimated volumes of fuel the City provided to prospective bidders in the RFB, nor can it prove it sustained any lost profits at all because it did not perform a price elasticity study. The City maintains that due to the pandemic (1) the City used less fuel than it projected and (2) that the City would have used even less fuel than it actually used if it had to pay higher prices to Davidson Oil than it paid to the replacement supplier, TAC.

Davidson Oil bases its calculation of lost profits on the volumes projected by the City when the Contract was executed. As such, these estimates are appropriately used to calculate damages

because they reflect Davidson Oil's expectation upon entering into the Contract, and they remained Davidson Oil's expectation up to the time the City breached the Contract by terminating it. Davidson Oil Facts 18 & 19. Damages for lost profits can be awarded so long as they were a "proximate result of the breach and . . . there is some basis on which a reasonable estimate of the amount of the profit can be made." *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1349 (Fed. Cir. 2001).

At a minimum, the City is liable to Davidson Oil for lost profits on the actual amount of fuel it purchased from the replacement supplier during the first year of the Contract. *See, e.g.*, *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 40, 121 N.M. 622, 916 P.2d 822. Such a measure could be a reasonable alternative means of calculating lost profits.

The primary focus of the City's defense to lost profits is the allegation that because the City would have paid higher fuel prices to Davidson Oil under the Contract than it did to TAC, had the Contract not been terminated, its fuel consumption would have been less than the amount of fuel it purchased from TAC. Thus, the City says Davidson Oil cannot even use actual fuel usage during the first year of the Contract to calculate its lost profits because the City's fuel consumption had the Contract not been terminated is unknown. As argued by the City, Davidson Oil may not recover lost profits because it "failed to conduct an economic study to determine the City's PED [price elasticity of demand]." Motion at 11.

The City's argument that lost profits cannot be proved without a PED study is absurd. First, the theory lacks any substantiation of its factual premise, *i.e.* that the fixed prices the City agreed to pay Davidson Oil are higher than what it paid to TAC. The City assures the Court that TAC's prices were "far less" than Davidson Oil's prices (Motion at 10) but fails to say what they were. TAC's prices were tied to market prices. Davidson Oil Fact 20. Consequently, the TAC prices may not have been "far less" throughout fiscal year 2021 and indeed could have been higher than the Contract

15

prices. The fall in oil prices that prompted the City to terminate the Contract bottomed out by April 2020 (before Davidson Oil would even have commenced deliveries) and by February 2021 market prices were higher than the Contract prices. Davidson Oil Facts 12 & 15.

Second, the idea that a PED study is necessary or appropriate in this case is not supported by expert opinion. The City has not identified an expert economist to testify in this case, nor any expert at all.

Third, the City contends that a PED study is required to support Davidson Oil's lost profits but fails to state what such a study might conclude other than to say that "[c]ommon sense and basic economic theory tells us the City would have purchased less fuel at the higher than Contract price [*sic*] …" Motion at 10. Common sense and basic economic theory might also suggest that a municipality's demand for fuel is relatively inelastic. Vital public services like police and fire protection cannot be scaled back when fuel costs rise. Even slightly less vital services like garbage pick-up and bus schedules can be curtailed only to a limited extent before citizens object.

Fourth, after observing that "one guess is as good as another" as to how many gallons of fuel the City would have purchased from Davidson Oil, the City speculates that this number "could even be zero because the City was not obligated to purchase exclusively from Plaintiff." Motion at 11. This contention is surprising because it is so demonstrably wrong. The Contract recites that the City "will award one vendor that is able to supply all the fuel required." Davidson Aff., Document 53-1, ¶ 4 and Addendum #1 to RFB, Document 53-3, at 122. *See also* Davidson Oil Fact 4.  Not only does this provision plainly provide that the Contract is exclusive, by reciting the City will purchase all of its fuel requirements from the awarded vendor, it also establishes the Contract is a requirements contract. *See, e.g., Cleek Aviation v. United States*, 19 Cl. Ct. 552, 554 (1990) (defining a requirements contract as "a contract in which the purchaser agrees to buy all of its needs of a

specified material from a particular supplier, and the supplier agrees, in turn, to fill all of the purchaser's needs during the period of the contract.")  As a matter of law, a requirements contract is exclusive. *Id.* ("[a] party breaches a requirements contract when it orders supplies or services of the type contracted for from another supplier.") (Emphasis omitted).

The odd notion that lost profits can only be demonstrated with a PED study is an unserious attempt to raise Davidson Oil's burden of proof beyond what the law requires. To satisfy the damages element of the breach of contract claims, Davidson Oil need only prove with reasonable certainty the fact that such damages occurred. *Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 27, 301 P.3d 387, 396 (citing 1 Robert L. Dunn, *Recovery of Damages for Lost Profits* § 1.8, at 25 (6th ed. 2005)).

After establishing that damages did in fact occur, Davidson Oil can prove the amount of lost profits damages simply by showing there is a reasonable basis on which the amount of damages can be ascertained. *See id.* ("[L]ess certainty (or none at all) is required to prove the amount of damages."); *see also Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 56, 400 P.3d 290, 302 (amount of damages claimed for breach of contract need only be reasonably ascertainable). Furthermore, there is no requirement that the computation of damages be done with mathematical certainty.  *See, e.g.*, *Nosker v. W. Farm Bureau Mut. Ins. Co.*, 1970-NMSC-046, ¶ 8, 466 P.2d 866, 868. "Where a legal right to damages exists for breach of contract, the fact that lost profits may not be computed with exact mathematical certainty does not prevent the plaintiff from submitting the issue to the fact finder." *Ranchers Expl. & Dev. Corp. v. Miles*, 1985-NMSC-019, ¶ 5, 102 N.M. 387, 696 P.2d 475.  "[D]amages are defeated only where there is uncertainty as to the cause of damage rather than the amount of damage." *Horizon Well Serv., LLC v. Pemco of N.M.,*

*LLC*, No. A-1-CA-36742, 2020 WL 4260396 at \*2 (July 20, 2020) (quoting *Ranchers Expl. & Dev. Corp.*, 696 P.2d at 477.)

The City states that "[d]amages based on a 'rough estimate' by a witness are insufficient to support a judgment." Motion at 11. While this is indeed the law, Davidson Oil's damages are hardly based on rough estimates. To compare, in *First National Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, 815 P.2d 613, the court held the evidence provided to support a calculation of damages was speculative where the witness testified that fees were "close to $30,000" and a partnership equity "had to be about $50,000," with no other document or evidence to support these numbers beyond this testimony. *Id.*, ¶ 18. Thus, the evidence was insufficient for the court to award such damages. *Id.* Here, unlike the evidence in *First National Bank*, Davidson Oil presents a precise calculation of its damages based on its expected profits per gallon of fuel and the estimates of the City's fuel requirements as provided at the time of contracting, minus mitigation. Thus, Davidson Oil has not only met its burden of proving damages exist, it has also provided the Court with an accurate basis for ascertaining its damages.

### C.   City Cannot Show Davidson Oil's Hedge Losses Are Not Recoverable

After devoting most of its motion to arguing the necessity of a PED study to show lost profits, the City attempts to brush aside the great majority of Davidson Oil's damages—its hedge losses—in a single paragraph. Motion at 12. The City maintains that the money Davidson Oil lost as a result of purchasing hedge contracts was not contemplated at the time the Contract was signed. The City further maintains that these hedge losses would have occurred even if the Contract had not been terminated, and thus they were not proximately caused by the termination.

In arguing that the hedge losses cannot be recovered if not contemplated at the time the Contract was entered, the City misstates the standard for awarding contract damages. The correct

standard in New Mexico for general and consequential damages in breach of contract cases is set forth in *Sunnyland Farms*, ¶ 11:

> Damages "that arise naturally and necessarily as the result of the breach" are "general damages," which give the plaintiff whatever value he or she would have obtained from the breached contract. *Id.* In some circumstances, the plaintiff can also recover for "consequential damages" or "special damages," which "are not based on the capital or present value of the promised performance but upon benefits it can produce or losses that may be caused by its absence." *Id.* (quoting 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.2(3), at 41 (2d ed. 1993)) (internal quotation marks omitted).

*Sunnyland Farms* further holds that the proper test for consequential damages is that found in the Restatement (Second) of Contracts § 351 (1981) ("It is enough, however, that the loss was foreseeable as a probable, as distinguished from a necessary, result of his breach. Furthermore, the party in breach need not have made a 'tacit agreement' to be liable for the loss. Nor must he have had the loss in mind when making the contract, for the test is an objective one based on what he had reason to foresee."). *Id*. ¶¶ 13-16.

Davidson Oil's hedge losses are general damages that clearly satisfy the New Mexico standard for such contract damages. Alternatively, should the Court deem these losses consequential damages, they nevertheless satisfy this standard as well.

Even under the subjective test for contract damages incorrectly urged by the City, Davidson Oil's hedge losses are recoverable because it was foreseeable and contemplated by both parties that Davidson Oil would hedge its position to guarantee it could supply fuel at the fixed prices called for by the Contract. Davidson Oil Facts 3 & 7. Indeed, the City informed prospective bidders in the RFB that "[i]t is the City's belief that the bidder should have its supplies already hedged in such a way, or the ability to hedge the volumes stated in the RFB, to permit it to offer a fixed price at the close date." Davidson Oil Fact 3.

The City's final argument is that Davidson Oil would have lost money on its hedge contracts even if the Contract had not been terminated, and thus this loss was not proximately caused by the termination. In advancing this argument, the City betrays a misunderstanding of how Davidson Oil hedged its obligations under the Contract. It is true that Davidson Oil lost money on its hedge contracts when market prices for fuel declined, and it would have lost that money regardless of whether or not the Contract was terminated. If the Contract had remained in place however, Davidson Oil would have recouped this loss (plus a modest profit) when it sold its fuel to the City at the fixed prices provided for in the Contract. Davidson Oil Fact 10.

## IV. CONCLUSION

For the reasons set forth in this response, the City of Albuquerque cannot establish as a matter of law that it is not liable to Davidson Oil Company for lost profits and hedge losses. Accordingly, the City's motion for partial summary judgment as to damages should be denied.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By   _/s/ Ross L. Crown_____
     Ross L. Crown
     *Attorneys for Plaintiff Davidson Oil Company*
     201 Third Street NW, Suite 500
     Albuquerque, NM  87102
     505-764-5402
     rcrown@lewisroca.com

**CERTIFICATE OF SERVICE**

I certify that on April 25, 2022, I served a copy of the foregoing response in opposition to motion for partial summary judgment on the attorneys listed below through the Court's case management and electronic filing system:

John E. DuBois
Assistant City Attorney
Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500 / F: (505) 768-4525
jdubois@cabq.gov

Janette Angelica Duran
Robert J. Desiderio
Erin S. Ferrerira
Sanchez, Mowrer & Desiderio, P.C.
P.O. Box 1996
Albuquerque, NM 87103
T: (505) 247-4321
F: (505) 247-4441
jaduran@smdlegal.com
rjdesiderio@smdlegal.com
erin@smdlegal.com


 */s/ Ross L. Crown*
Ross L. Crown