**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DAVIDSON OIL COMPANY,**

   **Plaintiff,**

**vs.**                                                    **Case No. 1:20-CV-00838-RB-JHR**

**CITY OF ALBUQUERQUE,**

   **Defendant.**

---

**PLAINTIFF DAVIDSON OIL COMPANY'S RESPONSE IN OPPOSITION
TO DEFENDANT CITY OF ALBUQUERQUE'S MOTION FOR
SUMMARY JUDGMENT**

---

Ross L. Crown
Lewis Roca Rothgerber Christie LLP
201 Third Street NW, Suite 500
Albuquerque, New Mexico 87103-1027
(505) 764-5402

Attorneys for Plaintiff Davidson Oil Company

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.     RESPONSE TO CITY'S STATEMENT OF UNDISPUTED MATERIAL FACTS ........ 2

II.    DAVIDSON OIL'S STATEMENT OF UNDISPUTED MATERIAL FACTS ............... 6

III.   ARGUMENT ..................................................................................................... 13

     A.   City's Exercise of Termination for Convenience Clause Was in Violation of Limits Imposed by New Mexico Law .................................................. 13

         1.   *City breached the Contract under the bad faith standard* ...................... 14

         2.   *City breached Contract under changed circumstances standard* ............. 17

     B.  As Interpreted by the City, the Contract Lacks Consideration .................................. 21

IV.   CONCLUSION ................................................................................................. 24

117386912.2

# TABLE OF AUTHORITIES

## New Mexico Cases

*Mb Oil Ltd., Co. v. City of Albuquerque*,
2016-NMCA-090, 382 P.3d 975............................................................13, 14, 18, 22

## Non-New Mexico Cases

*Cleek Aviation v. United States*,
19 Cl. Ct. 552 (1990) ..............................................................................2

*EDO Corp. v. Beech Aircraft Corp.*,
911 F.2d 1447 (10th Cir. 1990) ...............................................................22

*Krygoski Constr. Co. v. United States*,
94 F.3d 1537 (Fed. Cir. 1996)..................................................................14

*NCLN20, Inc. v. United States*,
99 Fed. Cl. 734 (2011) .......................................................................15, 16

*Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*,
470 F. Supp. 1308 (N.D.N.Y. 1979)..........................................................22

*Northrop Grumman Corp. v. United States*,
46 Fed. Cl. 622 (2000) ..........................................................................16

*RAM Eng'g & Constr., Inc. v. Univ. of Louisville*,
127 S.W.3d 579 (Ky. 2003) ................................................................18, 23

*Ry-Tan Constr., Inc. v. Wash. Elementary Sch. Dist. No. 6*,
93 P.3d 1095 (Ariz. Ct. App. 2004), *vacated on other grounds by*, 111 P.3d
1019 (Ariz. 2005) (en banc)....................................................................18

*Sigal Constr. Corp. v. General Servs. Admin.*,
10-1 BCA ¶ 34442 (2010) .....................................................................15

*Sylvan Crest Sand & Gravel Co. v. United States*,
150 F.2d 642 (2d Cir. 1945)....................................................................22

*TigerSwan, Inc. v. United States*,
110 Fed. Cl. 336 (2013) ..................................................................14, 16, 17

*Torncello v. United States*,
681 F.2d 756 (Ct. Cl. 1982) .............................................................14, 20, 22

*Van Engers v. Perini Corp.*,
No. CIV. A. 92-1982, 1993 WL 235911 (E.D. Pa. June 28, 1993)........................22

ii

**Rules**

Fed. R. Civ.P. 56(c)(1)(A) ...................................................................................3, 4, 5, 6

**Other Authorities**

7 Williston on Contracts § 7:7 (4th ed.)............................................................................23

Plaintiff Davidson Oil Company opposes Defendant City of Albuquerque's motion for summary judgment.[1] The City contends that as a matter of law it cannot be held liable to Davidson Oil for breach of contract and breach of the implied covenant of good faith and fair dealing. As demonstrated in this response, however, the City clearly breached its agreement with Davidson Oil, and therefore the motion should be denied.

Davidson Oil entered into a fixed price contract by which the company would exclusively supply all of the fuel requirements of the City of Albuquerque (hereinafter, the "Contract"). As the City expected, to guarantee its ability to deliver fuel at the fixed prices called for by the Contract, Davidson Oil promptly hedged its position by purchasing hedge contracts at prices pegged just below the contract prices. Following a decline in world oil prices and before Davidson Oil could even commence deliveries of fuel, the City terminated the contract for convenience solely to seek better pricing from another vendor. As a result of this termination, Davidson Oil lost money on its hedge contracts as well as the opportunity to earn expected profits on the Contract. The City refuses to compensate Davidson Oil for these losses.

The City's interpretation of the Contract to allow termination under these circumstances destroyed the mutuality of consideration upon which any contractual relationship depends. This action was a bad faith exercise of contracting discretion and not justified by a change in circumstances.[2]

---

[1]    Defendant's Motion for Summary Judgment and Supporting Memorandum filed March 14, 2022, Document 50.

[2] *See also* Davidson Oil's Motion for Summary Judgment filed March 14, 2022, Document 53.

117386912.2

## I. RESPONSE TO CITY'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Davidson Oil responds to the City's statement of undisputed material facts as follows:

**City Fact 1**:  Davidson Oil admits the City's Fact 1.

**City Fact 2**:  Davidson Oil admits the City's Fact 2.

**City Fact 3**:   Davidson Oil admits the City's Fact 3, except that the Contract had a two-year base period. *See* Affidavit of Chan Davidson ("Davidson Aff."), Document 53-1, ¶ 7 and Contract, Document 53-4 at 1.

**City Fact 4**:  Davidson Oil denies the City's Fact 4 because the Contract is exclusive. The Contract recites that the City "will award one vendor that is able to supply all the fuel required." Davidson Aff., Document 53-1, ¶ 4 and Addendum #1 to Request for Bids (RFB), Document 53-3, at 122. Not only does this provision plainly provide the Contract is exclusive, by reciting the City will purchase all of its fuel requirements from the awarded vendor, it also establishes the Contract is a requirements contract. *See, e.g., Cleek Aviation v. United States*, 19 Cl. Ct. 552, 554 (1990) (defining a requirements contract as "a contract in which the purchaser agrees to buy all of its needs of a specified material from a particular supplier, and the supplier agrees, in turn, to fill all of the purchaser's needs during the period of the contract.")  As a matter of law, a requirements contract is exclusive. *Id.* ("[a] party breaches a requirements contract when it orders supplies or services of the type contracted for from another supplier.") (Emphasis omitted).

**City Fact 5**:  Davidson Oil admits the City's Fact 5 but clarifies that although the Contract did not require the City to order any set amount of fuel from Davidson Oil, it did require the City to purchase all of its fuel requirements from the City. Davidson Aff., Document 53-1, ¶ 4 and Addendum #1 to Request for Bids (RFB), Document 53-3, at 122.

**City Fact 6**:  Davidson Oil admits the City's Fact 6.

2

**City Fact 7**:   In response to the City's Fact 7, Davidson Oil admits that the City agreed after negotiations with Davidson Oil to increase the notice period in the Termination for Convenience clause in the Contract from 30 days to 60 days. Davidson Oil is without information sufficient to admit or deny that almost all of the City's procurement contracts provide for 30 days' notice of a termination for convenience. Contrary to Fed. R. Civ.P. 56(c)(1)(A), the City does not cite to any materials in the record in support of this fact. Moreover, facts concerning other procurement contracts entered into by the City are immaterial to this case.

**City Fact 8**:   In response to the City's Fact 8, Davidson Oil admits that the Contract includes a Termination for Lack of Appropriations clause. However, this clause was never invoked, and it is therefore immaterial to this case. Davidson Oil further notes that the City erroneously quotes the Termination for Convenience clause in its Fact 8 rather than the Termination for Lack of Appropriations clause.

**City Fact 9**:   Davidson Oil admits the City's Fact 9, but it is immaterial to this case. *See* Davidson Oil's Response in Opposition to the City's Motion for Partial Summary Judgment as to Damages.

**City Fact 10**:   Davidson Oil admits the City's Fact 10, except it states that the date it purchased the hedge contracts was actually January 31, 2020, not January 30, 2020. Davidson Aff., Document 53-1, ¶ 8.

**City Fact 11**:   Davidson Oil denies the City's Fact 11. The City informed prospective bidders in Addendum #1 to the RFB that "[i]t is the City's belief that the bidder should have its supplies already hedged in such a way, or the ability to hedge the volumes stated in the RFB, to permit it to offer a fixed price at the close date." Davidson Aff., Document 53-1, ¶ 3 and Addendum #1 to RFB, Document 53-3, at 121.

**City Fact 12**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 12. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 13**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 13. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 14**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 14. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 15**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 15. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 16**:   The City's Fact 16 is a repeat of the City's Fact 9. As recited in response to Fact 9, Davidson Oil admits this fact. However, the fact is immaterial to this case. *See* Davidson Oil's Response in Opposition to the City's Motion for Partial Summary Judgment as to Damages.

**City Fact 17**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 17. In response to this alleged fact, Davidson Oil admits the City requested it to reduce its fixed prices after the Contract was entered into and that Davidson Oil declined to do so. Davidson Oil denies that the City cited the pandemic as a reason for the reduction. *See* Davidson Aff., Document 53-1, ¶ 12 and the City's e-mail of February 7, 2020, Document 53-5.

**City Fact 18**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 18. For the purpose of the present motion, Davidson Oil does not dispute

4

this alleged fact, but it is immaterial to this case. Also, the memo referenced in this alleged fact is dated March 18, 2020, not March 16, 2020.

**City Fact 19**:   For the purpose of the present motion, Davidson Oil does not dispute the City's Fact 19, but it is immaterial to this case.

**City Fact 20**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 20. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 21**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 21. Nevertheless, Davidson Oil admits this fact, but it is immaterial to this case. *See* Section III(A)(2), *infra.*

**City Fact 22**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 22. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 23**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 23. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 24**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 24. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 25**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 25. For the purpose of the present motion, Davidson Oil does not dispute this alleged fact, but it is immaterial to this case.

**City Fact 26**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 26. Davidson Oil disputes this alleged fact as speculation (as the City

5

concedes) without an evidentiary basis. Further, this alleged fact is immaterial to this case. *See* Davidson Oil's Response in Opposition to the City's Motion for Partial Summary Judgment as to Damages.

**City Fact 27**:   Contrary to Rule 56(c)(1)(A), the City does not cite to any materials in the record in support of its Fact 27. Davidson Oil disputes this fact as speculative. It is aware of no evidence demonstrating that the City's purchase of less fuel during fiscal year 2021 was due in whole or even in part to the pandemic. Moreover, this alleged fact is immaterial to this case. *See* Davidson Oil's Response in Opposition to the City's Motion for Partial Summary Judgment as to Damages.

## II.  DAVIDSON OIL'S STATEMENT OF UNDISPUTED MATERIAL FACTS

The following undisputed material facts are relevant to the issues raised by the City and should be considered in response to the motion for summary judgment.

**Davidson Oil Fact 1**:   On or about December 16, 2019, the City issued Request for Bids No. RFB0091C for the purchase and delivery of diesel fuel and unleaded gasoline. Among other things, the RFB indicated that the City "plans to award one firm fixed price agreement under this RFB."  Estimated usage of fuel was listed by fuel type in Appendix A to the RFB. The City cautioned bidders that it "does not intend these estimates to be bulk orders [it] shall order only in quantities and types needed."  Davidson Aff., Document 53-1, ¶ 3 and the RFB, Document 53-2, at 1 & 6.

**Davidson Oil Fact 2**:   On or about January 7, 2020, the City issued Addendum #1 to the RFB. The addendum recites that its purpose "is to respond to questions that were timely submitted by potential offerors..." Davidson Aff., Document 53-1, ¶ 4 and Addendum #1, Document 53-3, at 121.

6

**Davidson Oil Fact 3**:    Addendum #1 included the following questions and answers concerning the fixed price nature of the fuel supply contract and price hedging by bidders:

(1)  Is OPIS based pricing allowed, or must it be a fixed firm price?

**Answer:** The City is only interested in a firm fixed price.

(4)   Will the City consider a differential to be added to NYMEX at the time of award to allow for market fluctuation?

**Answer:**  No. *It is the City's belief that the bidder should have its supplies already hedged in such a way, or the ability to hedge the volumes stated in the RFB, to permit it to offer a fixed price at the close date.* [Emphasis added].

(12)   Will the City allow for NYMEX adjustments after award?

**Answer:** No. This is for a firm fixed price agreement.

(27)   Is the bid for one fixed-price per-gallon for each product for the entire year? Are you looking for one price that will not change with the market price of fuel?

**Answer:** Yes, the City is requesting a firm fixed price per gallon delivered to various City sites.

(28)   When quoting our price per gallon on the quote form, where do we notate the rak [sic] or base price per gallon that changes every day?

**Answer:** The City will not take into consideration pricing that will fluctuate daily. The intent of this bid [*sic*] is for a firm fixed price for the term of the agreement as stated in the RFB.

Davidson Aff., Document 53-1, ¶ 4 and Addendum #1, Document 53-3, at 121-123.

**Davidson Oil Fact 4**:    Addendum #1 included the following questions and answers concerning the exclusive nature of the fuel supply contract:

(7)  Will the City purchase from any vendor, other than the awarded vendor during the life of the contract?

**Answer:** The City's intent is to award one vendor that can meet the needs of the City's fuel usage.

(13)  Will the City award Gas and ULSD to the same vendor or will the City split awards between Gas and ULSD?

7

> **Answer:**  The City will award one vendor that is able to supply all the fuel required.
>
> (25)   Why did the City move from a Vendor Pool purchasing fuel from multiple vendors, to a contract with one fuel vendor?
>
> **Answer:** The City believes it's in its best interest to purchase fuel for various needs from one supplier. The City has an obligation to seek all ways in which cost effectiveness is of the utmost priority to obtain, and be sustained throughout the duration of any contracts being executed.

Davidson Aff., Document 53-1, ¶ 4 and Addendum # 1, Document 53-3, at 121-123.

**Davidson Oil Fact 5**:    Addendum #1 included the following questions and answers concerning the quantities to be ordered under the fuel supply contract:

> (8)   Will the City purchase all gallons from the awarded vendor during the contract period? …
>
> **Answer:** The quantities listed are an estimated amount based on prior usage. Estimated usage should not be considered as a firm amount that will be purchased from the successful Bidder. The City does not intend these estimates to be bulk orders and shall order only in quantities and types needed.
>
> (18)   If the City does not purchase all gallons, can the awarded vendor charge the City for liquidation damages?
>
> **Answer:** No. Please refer to the "Estimated Usage" section in the RFB.

Davidson Aff., Document 53-1, ¶ 4 and Addendum #1, Document 53-3, at 121-122.

**Davidson Oil Fact 6**:   Four vendors, including Davidson Oil, submitted bids in response to the RFB. The City then requested best and final prices. On January 16, 2020, Davidson Oil reduced its original bid for fuel and submitted to the City its best and final prices.  Davidson Aff., Document 53-1, ¶ 5.

**Davidson Oil Fact 7**:   Following submission of Davidson Oil's best and final prices to the City, the City notified Davidson Oil that it intended to award the fuel supply contract to it. After reviewing the terms and conditions that were to be incorporated into the contract, Davidson

117386912.2

Oil requested that the termination for convenience clause be omitted, or alternatively, that the notice period under the clause be extended up to 180 days. In response, the City declined to delete the termination for convenience clause but agreed to extend the notice period from 30 days to 60 days.  Davidson Oil agreed to this modification.  Davidson Aff., Document 53-1, ¶ 6.

**Davidson Oil Fact 8**:   On or about January 21, 2020, the City and Davidson Oil entered into Contract No. SHR000022076.  Davidson Aff., Document 53-1, ¶ 7 and Contract, Document 53-4.

**Davidson Oil Fact 9**:   The Contract provides for Davidson Oil to supply fuel to the City for two years from July 1, 2020 to June 30, 2022.  The Contract also includes two 1-year options to renew. Renewal was at the discretion of the City by mutual written agreement of both parties. Davidson Aff., Document 53-1, ¶ 7 and Contract, Document 53-4, at 1.

**Davidson Oil Fact 10**:   Pricing under the Contract was to remain firm through the first year. Pricing for the second year was to be provided to the City by Davidson Oil by December 31, 2020. Davidson Aff., Document 53-1, ¶ 7 and Contract, Document 53-4, at 2.

**Davidson Oil Fact 11**:   The Contract includes a Termination for Convenience (TFC) clause. This clause states as follows:

> City may terminate the Contract at any time by giving at least 60 days' written notice to the Vendor. In such event, vendor [sic] shall be paid under the terms of the Contract for all goods and/or services provided to and accepted by City, if ordered or accepted by City prior to the effective date of termination.

Davidson Aff., Document 53-1, ¶ 7 and Contract, Document 53-4, at 7.

**Davidson Oil Fact 12**:   The Contract provides that it "is governed by the laws of the State of New Mexico and the City of Albuquerque."  Davidson Aff., Document 53-1, ¶ 7 and Contract, Document 53-4, at 7.

117386912.2

**Davidson Oil Fact 13**:   Having committed to fixed prices for fuel for a one-year period, Davidson Oil needed to ensure it would have the ability to sell fuel to the City at the agreed prices regardless of market fluctuations. To do so, on January 31, 2020, Davidson Oil purchased hedge contracts. By entering into hedge contracts Davidson Oil guaranteed that no matter the market price, it would have the money to buy diesel fuel and unleaded gasoline at prices less than the fixed prices called for during the first year of the Contract. Davidson Aff., Document 53-1, ¶ 8.

**Davidson Oil Fact 14**:   On February 7, 2020, a little more than two weeks after Davidson Oil and the City entered into the Contract and a week after Davidson Oil purchased its hedge contracts, the company received an e-mail from the City. This e-mail requested that, in light of price decreases in oil markets since January 14, 2020, Davidson Oil reduce the fixed prices incorporated into the Contract. The e-mail stated in pertinent part as follows:

> … there has been a recent decrease in oil pricing. Since the January 14, 2020 RFB close, prices of RBOB futures with a July 2020 expiration have declined by 8.8 % and 1-year swaps have declined by 7.5%. Similar ULSD futures and swaps have declined by 12.2% and 9.3%, respectively. *In view of the current pricing, the City is requesting Davidson Oil consider a reduction of pricing per gallon for diesel and unleaded fuel for the recently awarded contract.* [Emphasis added.]

Davidson Aff., Document 53-1, ¶ 12 and e-mail dated February 7, 2020, Document 53-5.

**Davidson Oil Fact 15**:   Davidson Oil declined the City's request for a price reduction. Such a reduction would have been inconsistent with the Contract. By entering into the Contract, the City and Davidson Oil agreed to fixed prices for one year. As noted above, to ensure Davidson Oil could fulfill its contractual commitment to the City, it had already purchased hedge contracts obligating the company to pay money to the other party if market prices fell below the hedge prices. A reduction in the fixed prices called for by the Contract below the hedge prices would cause Davidson Oil to lose money. Davidson Aff., Document 53-1, ¶ 13.

117386912.2

**Davidson Oil Fact 16**:   By e-mail dated March 19, 2020, the City provided notice to Davidson Oil of its intent to terminate the Contract effective May 19, 2020 pursuant to the Termination for Convenience ("TFC") clause. The notice of termination provided no reason for the termination. In subsequent written discovery in this case, the City recited its reason for termination was the decline in oil prices combined with the uncertainty created by the COVID-19 pandemic. Davidson Aff., Document 53-1, ¶ 14 and e-mail dated March 19, 2020, Document 53-6; City's Answer to Interrogatory No. 8, Document 53-10.

**Davidson Oil Fact 17**:   The City's Chief Financial Officer, Sanjay Bhakta, testified in his deposition in this action as follows about the City's intention to pay the fixed prices called for by the Contract at the time of award:

> Q. So is it fair to say at the time the contract was awarded, the City did not intend to pay a fixed price for fuel oil if the market price for fuel oil declined substantially?
>
> A**.** I just don't know.  I don't know what the future would be.

Excerpts of Bhakta deposition ("Bhakta depo.") Document 53-11, at 7, lns. 12-24 & 30, lns. 9-14.

**Davidson Oil Fact 18**:   The City's Chief Financial Officer testified as follows as to how the City would have responded to a price *increase* in the oil market after the Contract was awarded:

> Q. If oil prices during that same period had spiked upward substantially, would the City have entertained a request from Davidson Oil to adjust the fixed price upwards?
>
> A. No.
>
> Q. And why not?
>
> A. That's why -- I mean it is in the City's best interest -- my fiduciary responsibility is to pay as much less as possible for anything we buy, and not to pay more than what we are required to pay.

Bhakta depo., Document 53-11, at 36, lns. 11-20.

11

**Davidson Oil Fact 19**:   The City's Chief Financial Officer testified as follows about the anticipated effect of the Contract on the City if its demand for fuel was reduced by the COVID-19 pandemic:

> Q. So if the pandemic were to, for example, reduce the City's demand for fuel oil, that would not be a problem under the Davidson Oil contract, because you weren't required to purchase any particular quantity?
>
> A. That's right.

Bhakta depo., Document 53-11, at 44, lns. 15-20.

**Davidson Oil Fact 20:** After the Contract was terminated, the City contracted for fuel with a replacement supplier, Truman Arnold Company ("TAC"). These purchases were pursuant to a State of New Mexico Statewide Purchasing Agreement. The Statewide Purchasing Agreement was tied to market prices. Affidavit of Christopher Daniel, City of Albuquerque Chief Investment Officer, Document 49-4, ¶ 15; Excerpts of Deposition of Sanjay Bhakta attached hereto as **Exhibit 1**, at 60-61, lns. 18 – 25.

**Davidson Oil Fact 21**:   Prices in the world oil market are volatile. The events leading to the filing of Davidson Oil's lawsuit against the City began with a dramatic decline in world oil prices in January 2020. This decline bottomed out in April 2020 and thereafter oil prices generally rallied until mid-November 2020 when prices began a steady increase that continued throughout 2021 and into 2022. In late February 2022, following Russia's invasion of Ukraine, oil prices accelerated upwards. Davidson Aff., Document 53-1, ¶ 27.

**Davidson Oil Fact 22**: Davidson Oil sustained damages as a result of the City's termination of the Contract. Davidson Aff., Document 53-1, ¶ 25 and Calculation of Damages, Document 53-9.

12

**Davidson Oil Fact 23:**  The City has refused to compensate Davidson Oil for the damages it has sustained as a result of the termination of the Contract. Davidson Aff., Document 53-1, ¶ 26.

### III.  ARGUMENT

Based on the undisputed facts of this case, there is no basis for the Court to grant the City's motion for summary judgment on Davidson Oil's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The motion should be denied.

### A.   City's Exercise of Termination for Convenience Clause Was in Violation of Limits Imposed by New Mexico Law

The City's first argument for summary judgment against Davidson Oil is that it properly invoked the Termination for Convenience clause under the applicable standards. Motion at 8-10.[3] This contention fails. The City breached the fuel supply contract by using the TFC clause to seek from another vendor cheaper pricing than it agreed to pay Davidson Oil.  In doing so, the City broke its commitment to purchase from Davidson Oil all of its fuel requirements for at least one year at the fixed prices called for in the Contract.

The parties agree that the leading New Mexico case addressing terminations for convenience by government agencies is *Mb Oil Ltd., Co. v. City of Albuquerque*, 2016-NMCA-090, 382 P.3d 975. In that case, the Court of Appeals examined essentially the same TFC clause at issue here and explained that regardless of the broad discretion afforded the City by this provision, there are "some limitations on the government's ability to terminate contracts at will." *Id.*, ¶ 21. According to the court, "[t]hese limitations are designed to ensure that government contracts with nonmutual termination for convenience clauses are not illusory." *Id.* (citing *Torncello v. United States*, 681 F.2d. 756, 769 (Ct. Cl. 1982)). *See also*, Memorandum Opinion and Order of June 23, 2021

---

[3] The Motion contains no page numbers. Page references are to the numbers assigned by the Court.

("Mem. Op. and Order") (Doc. 15) (denying in part and granting in part the City's motion to dismiss the complaint in this action) at 7 (citing *id.*).

In *Mb Oil*, the Court of Appeals observed that two competing standards have developed to determine whether the exercise of a termination for convenience clause renders a contract illusory. *See also*, Mem. Op. and Order (Doc. 15) at 7. The first standard provides the government cannot "abuse its discretion or act in bad faith." *Id.*, ¶ 22 (citing *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1543-45 (Fed. Cir. 1996)); *see also*, Mem. Op. and Order (Doc. 15) at 12 (citing *id.*).

The second standard requires a sufficient change in the "circumstances of the bargain or the expectations of the parties." *Id.*, ¶ 23 (citing *Torncello*, 681 F.2d at 771); *see also*, Mem. Op. and Order (Doc. 15) at 7-8 (citing *id.*).

### 1.     *City breached the Contract under the bad faith standard*

According to *MB Oil*, bad faith may be found where the government terminates a contract only to secure "a better bargain from a competing supplier in a requirements contract." 2016-NMCA-090, ¶ 22, 382 P.3d 979 (citing *Torncello*, 681 F.2d at 771). This principle is well-established. Relying on *Torncello,* the Federal Circuit has held that "[a] contracting officer may not terminate for convenience in bad faith, for example, simply to acquire a better bargain from another source." *Krygoski*, 94 F.3d at 1541. "When tainted by bad faith or an abuse of contracting discretion, a termination for convenience causes a contract breach." *Id.*; *see also, TigerSwan, Inc. v. United States,* 110 Fed. Cl. 336, 347 (2013) (abuse of discretion standard satisfied "when government has terminated a contract for convenience in order to get a better price for itself."); *NCLN20, Inc. v. United States,* 99 Fed. Cl. 734, 759 (2011) (terminating a contract to find a better bargain is "grounds for invalidating a termination for convenience"); *Sigal Constr. Corp. v. General Servs. Admin.*, 10-1 BCA ¶ 34442 (2010) at 6 ("[o]ne of the few limitations on the

14

Government's right to terminate for convenience is that the Government may not terminate simply to get a better price for performing needed work.")

Here, Davidson Oil alleges a valid claim for breach of contract under the bad faith standard. In December 2019, the City issued an RFB requesting bids for a fixed price, fuel supply requirements contract. Davidson Oil Fact 1. The RFB incorporated an addendum setting forth questions and answers concerning the procurement. Davidson Oil Fact 2. In response to questions from prospective bidders, the City repeatedly emphasized that it would accept only fixed prices, and not entertain quotes subject to adjustment based on market changes. Davidson Oil Fact 3. The City further recited that to permit bidders to offer fixed prices, they should have their supplies already hedged or have the ability to hedge. *Id*. These questions and answers also made it clear that the fuel supply contract would be exclusive and that the winning bidder would be have to supply all of the City's fuel requirements with no commitment by the City to any specific quantity. Davidson Oil Facts 4 & 5.

Following two rounds of competitive bidding, Davidson Oil was awarded the Contract. Davidson Oil Facts 6 & 7. The City and Davidson Oil entered into the Contract on January 21, 2020. Davidson Oil Fact 8. The Contract provided for Davidson Oil exclusively to supply the City's requirements for diesel fuel and unleaded gasoline at the fixed prices it bid for at least one year. Davidson Oil Facts 1, 9 & 10.[4]  As the City expected, promptly after contract award and to ensure that it would have the ability to deliver fuel to the City regardless of market fluctuations, on January 31, 2020, Davidson Oil entered into hedge contracts. Davidson Oil Fact 13.  The hedge

---

[4] The City contends the Contract was not exclusive, but see Davidson Oil's response to the City's Fact 4, *supra.*

contracts guaranteed that Davidson Oil would have the money available to pay for fuel if market prices rose. *Id.*

On February 7, 2020, a little more than two weeks after the parties entered the Contract and one week after Davidson Oil purchased its hedge contracts, the City, citing recent price decreases in the oil market, asked Davison Oil to cut its prices. Davidson Oil Fact 14. Davidson Oil declined to reduce its prices, noting that the Contract provides for fixed prices and that it would lose money if it reduced its prices below the prices of its hedge contracts. Davidson Oil Fact 15. The City responded on March 19, 2020 by exercising the TFC clause. Davidson Oil Fact 16. The City provided no reason for the termination but later alleged in discovery that the termination was due to the decline in oil prices combined with the uncertainty created by the COVID-19 pandemic. *Id.* After refusing to rescind the termination or allow Davidson Oil to provide reduced prices to mitigate its damages, the City contracted for fuel with another vendor at cheaper market prices under the New Mexico State Price Agreement. Davidson Oil Fact 20.

A termination for convenience is also unlawful under the bad faith standard when the government enters into a contract with no intention of fulfilling its promises. *Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 627 (2000). *See also*, *TigerSwan,* 110 Fed. Cl. at 336 ("… a breach may arise when the government enters a contract without intending to allow the awardee to perform..."); *NCLN20*, 99 Fed. Cl. at 759 ("…entering a contract with no intention of honoring it…are grounds for invalidating a termination for convenience.").

Here, the City clearly did not intend to be bound to the Contract when it was awarded. A mere 15 days after executing the Contract, the City was already asking Davidson Oil for reductions to the fixed prices it had agreed to pay. Davidson Oil Fact 14. According to its Chief Financial Officer, at the time it awarded the Contract, the City was not necessarily committed to pay the

16

fixed prices it had just accepted from Davidson Oil. When asked in his deposition if it was fair to

say that at the time of award, "the City did not intend to pay a fixed price for fuel oil if the market

price for fuel oil declined substantially," Mr. Bhakta responded, "I just don't know." Davidson Oil

Fact 17.

Despite the wealth of case authority in New Mexico and under federal law finding

governmental agencies in breach of the bad faith standard when they terminate a contract to secure

a better bargain from another supplier or where the government enters into a contract without

intending to be bound to it, the City argues that bad faith can only be present where a government

official acts with "a specific intent to injure the plaintiff." Motion at 10. To the contrary, the Court

of Federal Claims has held that such specific intent is not required to prove bad faith:

> The Federal Circuit has recognized several circumstances where the government,
> in exercising its contractual right to terminate for convenience may be liable for
> breach of contract. These circumstances certainly include situations in which the
> government has acted with animus toward the contractor, but the Circuit has also
> recognized a potential breach claim where the government abused its discretion or
> never intended the contract to go forward. [Citations omitted] *In those later
> situations, allegations of animus toward the plaintiff are not necessarily required.*
> For example, the 'abuse of discretion' standard has been satisfied when the
> government has terminated a contract for convenience in order to get a better price
> for itself. [Citations omitted] Similarly, the Federal Circuit has indicated that a
> breach may arise when the government enters a contract without intending to allow
> the awardee to perform under the contract.

*TigerSwan,* 110 Fed. Cl. at 346-347. [Emphasis added].

The City's exercise of the TFC clause was in bad faith and an abuse of contracting

discretion. Accordingly, under this standard the City is in breach of contract.

### 2.   *City breached Contract under changed circumstances standard*

The second standard for determining if a termination for convenience is a breach of contract

under New Mexico law is the changed circumstances test. *Mb Oil*, 2016-NMCA-090, ¶ 23, 382

P.3d 980. This standard allows a termination for convenience to be enforced "where the

117386912.2

circumstances of the bargain or the expectations of the parties have changed sufficiently so that the clause serves only to allocate risk." *Id.* (citing *Torncello*, 681 F.2d at 771).

The Court of Appeals in *Mb Oil* court noted that this standard has been adopted by state courts. *Id.* (citing *Ry-Tan Constr., Inc. v. Wash. Elementary Sch. Dist. No. 6,* 93 P.3d 1095, 1112 (Ariz. Ct. App. 2004), *vacated on other grounds by*, 111 P.3d 1019, 1024 (Ariz. 2005) (en banc)); *RAM Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 587 (Ky. 2003).

In *Ry-Tan Construction,* the Arizona Court of Appeals ruled that a termination for convenience could not be properly invoked as a defense to a breach of contract claim where circumstances had not changed, holding that "… no unexpected event or 'changed circumstances' occurred that might justify retroactive application of the contract termination provision, and we will not reduce the contract between the parties to an illusory contract that vitiates the terms contained in the contract documents…" *Ry-Tan Constr.*, 93 P.3d at 1112.

In *Ram Engineering*, the Supreme Court of Kentucky noted that "the law is clear that a contracting officer cannot terminate for convenience in bad faith simply to acquire a better bargain elsewhere." *Id.* at 583. The court went on to say that "interpreting termination for convenience as allowing the government to terminate without a substantial change of circumstances would not advance the fairness policies" of the Kentucky version of the Model Procurement Code. *Id.* at 586. Thus, "[w]hile contractors ought to expect the government to terminate a contract when it is in its best interest to do so, it is also reasonable for them to expect that the government's interest will only change if the circumstances surrounding the contract substantially change." *Id*.

The City's entire argument that its termination of the Contract was based on changed circumstances is that it "was reacting to a worldwide pandemic and the threat of a collapsing economy" and that the price of fuel "was only symptomatic of this larger concern." Motion at 10.

18

Despite the hyperbolic grounds for termination now offered, the City's request for a price reduction on February 7, 2020 said nothing about the pandemic or the economy, citing only falling oil prices. Davidson Oil Fact 14. The City's notice of termination six weeks later gave no reason for this action whatsoever. Davidson Oil Fact 16.

The three reasons the City now gives for termination, *i.e.* the pandemic, the economy and oil prices, actually constitute a single basis for exercising the TFC clause. That is, in light of world events, the City no longer deemed it prudent to pay the fixed prices for fuel it had agreed to pay. Instead, the City wanted to purchase fuel at the lower market prices that were then available. Thus, it contracted with another fuel supplier for these lower prices. Davidson Oil Fact 20. The pandemic and threats to the economy do not constitute separate grounds for termination distinct from price because despite these conditions, the City still needed fuel and still chose to contract for fuel, except with another supplier.

The City's termination to seek lower prices cannot constitute a material change of circumstances concerning the bargain reached between the parties or their expectations. This is because the Contract anticipated market fluctuations in calling for fixed prices. Davidson Oil Facts 1 & 8. When asked by prospective bidders if they could propose prices tied to market prices, the City repeatedly stated it would not consider such bids. Davidson Oil Fact 3. Immediately following contract award, Davidson Oil purchased hedge contracts to assure its ability to deliver fuel at the fixed prices to which the parties agreed. Davidson Oil Fact 13. The City's insistence on fixed prices reflects the reality that the oil market is volatile. Davidson Oil Fact 21. Although the oil market did indeed experience a severe decline in prices, this price drop had already bottomed-out by April 2020, before Davidson Oil was even scheduled to begin fuel deliveries under the Contract. Davidson Oil Facts 9 & 21. Thereafter, fuel prices rose during the remainder of 2020, throughout

2021, and into 2022. Davidson Oil Fact 21. In February 2022, the increase in oil prices accelerated upwards following Russia's invasion of Ukraine. *Id.*

Unforeseen price changes in a commodity market are precisely the type of unanticipated risks that cause parties to enter into fixed-price supply contracts. The Contract was designed to grant predictability to both the City and Davidson Oil in an uncertain oil market. This agreement was not intended to be cast aside as soon as prices shifted in favor of the City. As this Court noted in ruling on the motion to dismiss, "the City has not persuaded the Court that a price decline in the context of a fixed-price contract is a change in circumstances as contemplated by *Torncello*." Mem. Op. and Order (Doc. 15) at 10. Consequently, "the City has not adequately shown that it possessed an obligation sufficient to supply consideration where Davidson Oil had already expended resources to prepare for the contract." *Id.* at 12.

Any decrease in the City's demand for fuel resulting from the pandemic also does not constitute changed circumstances. Under the Contract, the City could purchase as much or as little fuel as it needed. Davidson Oil Facts 1 & 5. The Contract did not bind the City to buy any particular amount of fuel oil. Instead, it merely obligated the City to purchase whatever fuel it did require from Davidson Oil. Therefore, if the City's demand for fuel was reduced, it was free to limit its purchases under the Contract accordingly. For this reason, its Chief Financial Officer admits that a reduction in the City's demand for fuel would not have caused a problem under the Contract. Davidson Oil Fact 19.

The City's exercise of the TFC clause was not justified by a change in circumstances. This termination was therefore a breach of contract under that standard as well.

**B.   <u>As Interpreted by the City, the Contract Lacks Consideration</u>**

The City's second argument for summary judgment is that the inclusion of a TFC clause in the Contract does not mean this agreement lacks sufficient consideration. Motion at 11-12. Specifically, the City contends that the TFC clause is supported by adequate consideration because (1) this provision provides for a 60-day notice of termination (increased from 30 days after negotiations with Davidson Oil) and (2) the clause requires Davidson Oil to be paid for all goods or services provided to the City.

The consideration argument advanced by the City is a straw man. Davidson Oil does not contend that "[t]he mere option to cancel or terminate … 'wholly defeat[s] consideration.'" Motion at 11.  Nor does Davidson Oil maintain that the specific TFC clause in the Contract could never be supported by consideration. Rather, Davidson Oil asserts that the Contract as it is interpreted by the City lacks consideration.

As demonstrated in Section III(A) *supra*, the City and Davidson Oil entered in to a contract for Davidson Oil exclusively to supply all of the City's fuel requirements for at least one year at fixed prices agreed to by the parties. Davidson Oil immediately purchased hedge contracts to guarantee it would have the financial ability to supply fuel for a year at the fixed prices called for by the Contract. Meanwhile, market prices for fuel which had begun falling before the Contract was executed continued to fall. In light of this plunge in fuel prices, rather than honor the fixed prices it had committed to pay, the City first asked Davidson Oil to cut its prices and when the company said it could not do so, the City then terminated the Contract to buy fuel at cheaper prices from another supplier. Davidson Oil Facts 1-5, 8-10, 13-16 & 20. This termination caused Davidson Oil to incur damages. Davidson Oil Fact 22. The City refuses to compensate Davidson Oil for these damages. Davidson Oil Fact 23.

Based on these undisputed facts, the City's invocation of the TFC clause was in violation of both the bad faith and changed circumstances standards. As a matter of law, breach of these standards by a government agency in exercising a nonmutual termination for convenience clause results in an illusory contract lacking adequate consideration. *Mb Oil*, 2016 –NMCA-090, ¶ 21 (citing *Torncello*, 681 F.2d at 769).

Notwithstanding the undisputed facts, the City argues adequate consideration for the Contract exists and it was entitled to terminate the Contract without incurring any financial obligation to Davidson Oil. Yet if the termination is permitted to stand without payment of any damages to Davidson Oil, this termination would render the City's promises meaningless. As this Court noted in ruling upon the motion to dismiss, the City "has not adequately established consideration under these circumstances." Mem. Op. and Order (Doc. 15) at 13.

None of the four cases relied upon by the City in arguing a TFC clause can be supported by consideration (*see* Motion at 11-12) involve the termination for convenience of a fixed price requirements contract to seek better pricing from another supplier. These cases are also distinguishable from the present case on other grounds. *See* S*ylvan Crest Sand & Gravel Co. v. United States,* 150 F.2d 642 (2d Cir. 1945) (terminated contractor did not sustain uncompensated costs of performance); *Van Engers v. Perini Corp.*, No. CIV. A. 92-1982, 1993 WL 235911 (E.D. Pa. June 28, 1993) (terminated subcontractor recovered actual losses and anticipated profits); *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*, 470 F. Supp. 1308 (N.D.N.Y. 1979) (construction contract terminated as a result of performance concerns in case decided under New York state law);  *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447 (10th Cir. 1990) (contracts for design and construction of an aircraft wing terminated due to design concerns and threatened breach of noncompetition clause).

22

An illusory contract is not a contract at all. Courts refuse to construe a contract clause in such a way that the contract is destroyed if there is an alternative reading that upholds the contract. *Torncello*, 681 F.2d at 771. "[T]he government's ability to invoke a TFC clause must be predicated on 'an obligation sufficient to uphold a contract…'" Mem. Op. and Order (Doc. 15) at 13 (citing *id.*)

As *RAM Engineering* observed in addressing the change of circumstances standard, if there is no good faith limitation set by that standard, "then the government's contracted-for promise becomes illusory[.]" 127 S.W.3d at 586. "Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration." *Id.* (citing 7 Williston on Contracts § 7:7 (4th ed.)).

For commodities subject to volatile market pricing, fixed-price contracts serve to share risk. By entering into the Contract with Davidson Oil, the City protected itself from increases in the market price of oil. The risk of price increases is borne by Davidson Oil. In exchange for this protection, the City accepted the risk that the price of oil might decline, and it would end-up paying Davidson Oil more than market rates.

In terminating the Contract, the City sought to dispense with the parties' agreed allocation of risk and instead place the entire risk on Davidson Oil. That is, if the market price of fuel rises, the City is shielded from this increase by the fixed prices it contracted for. If, on the other hand, prices fall, the City claims the right to terminate its fixed-price contract and look for better rates elsewhere. In effect declaring "heads I win, tails you lose," the City seeks to impose any and all losses on Davidson Oil. Should market prices increase, Davidson Oil must honor the lower prices it agreed to with the City. Should prices fall, the City terminates and Davidson Oil is stuck paying

117386912.2

for the hedge contracts it purchased to ensure it would be able to supply the City. This one-way shifting of risk is the very opposite of mutually bargained-for consideration.

The lack of mutual consideration in the way the City interprets the Contract is highlighted by the deposition testimony of Sanjay Bhakta, the City's Chief Financial Officer. Although the City requested Davidson Oil to cut its fixed prices following a fall in world oil prices and then terminated the Contract, Mr. Bhakta made it clear that the City did not deem price accommodations reciprocal. Mr. Bhakta testified that if oil prices had spiked substantially higher during the same time period, the City would not have entertained a request from Davidson Oil to adjust the fixed prices upwards. Davidson Oil Fact 18.

The City's termination of the Contract as established by the undisputed facts in this case was in violation of both the bad faith and change of circumstances standards. Consequently, the Contract would lack adequate consideration and its promises rendered illusory if the City is not required to pay damages to Davidson Oil for breach of contract.

## IV. CONCLUSION

For the reasons set forth in this response, the City of Albuquerque cannot establish any basis for granting summary judgment in its favor on Davidson Oil Company's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Accordingly, the City's motion for summary judgment should be denied.

24

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By  */s/ Ross L. Crown*
    Ross L. Crown
    *Attorneys for Plaintiff Davidson Oil Company*
    201 Third Street NW, Suite 500
    Albuquerque, NM  87102
    505-764-5402
    rcrown@lrrc.com

### CERTIFICATE OF SERVICE

I certify that on April 25, 2022, I served a copy of the foregoing response in opposition to motion for summary judgment on the attorneys listed below through the Court's case management and electronic filing system:

John E. DuBois
Assistant City Attorney
Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
T: (505) 768-4500
F: (505) 768-4525
jdubois@cabq.gov
dking@cabq.gov

Janette Angelica Duran
Robert J. Desiderio
Erin S. Ferrerira
Sanchez, Mowrer & Desiderio, P.C.
P.O. Box 1996
Albuquerque, NM 87103
T: (505) 247-4321
F: (505) 247-4441
jaduran@smdlegal.com
rjdesiderio@smdlegal.com
erin@smdlegal.com

*/s/ Ross L. Crown*
Ross L. Crown

25

117386912.2