IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVIDSON OIL COMPANY,

      Plaintiff,

vs.                                                    Case No. 1:20-CV-00838-RB-JHR

CITY OF ALBUQUERQUE,

      Defendant.

---

## PLAINTIFF DAVIDSON OIL COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Ross L. Crown
Lewis Roca Rothgerber Christie LLP
201 Third Street NW, Suite 500
Albuquerque, New Mexico 87103-1027
(505) 764-5402

Attorneys for Plaintiff Davidson Oil Company

117685234.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

1. City Does Not Raise a Genuine Issue of Material Fact ...........................................1

    *(a) Admissions* ..............................................................................................1

    *(b) Lack of knowledge* ................................................................................1

    *(c) Denials* ...................................................................................................2

    *(d) Legal Conclusion* ..................................................................................2

2. No Issue of Material Fact as to Lack of City Intent to Honor Contract...................3

3. No Issue of Material Fact That Changed Circumstances Did Not Exist ..................4

4. Facts Show City Liable for Breach of Implied Covenant.........................................6

5. No Issue of Material Fact as to Damages Incurred by Davidson Oil ......................7

6. If Nothing Else, Davidson Oil Entitled to Compensation for Cost of Performance................10

Request for Relief ......................................................................................................12

117685234.1

# TABLE OF AUTHORITIES

## New Mexico Cases

*Camino Real Mobile Home Park P'ship v. Wolfe*,
 1995-NMSC-013, 891 P.2d 1190 (1995)..............................................................................10

*Horizon Well Serv., LLC v. Pemco of N.M., LLC*,
 No. A-1-CA-36742, 2020 WL 4260396 (July 20, 2020)...........................................................9

*Nosker v. W. Farm Bureau Mut. Ins. Co.*,
 1970-NMSC-046, 466 P.2d 866 ................................................................................................9

*Ranchers Expl. & Dev. Corp. v. Miles*,
 1985-NMSC-019, 696 P.2d 475 ................................................................................................9

*Sanders v. FedEx Ground Package System, Inc.*,
 2008-NMSC-040, 188 P.3d 1200 ..............................................................................................6

*Strata Prod. Co. v. Mercury Expl. Co.*,
 1996-NMSC-016, 121 N.M. 622, 916 P.2d 822 .......................................................................8

*Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*,
 2013-NMSC-017, 301 P.3d 387 ...........................................................................................9, 10

*Unified Contractor, Inc. v. Albuquerque Hous. Auth.*,
 2017-NMCA-060, 400 P.3d 290................................................................................................9

## Non-New Mexico Cases

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)...................................................................................................................2

*Cal. Fed. Bank, FSB v. United States*,
 245 F.3d 1342 (Fed. Cir. 2001).................................................................................................8

*Conaway v. Smith*,
 853 F.2d 789 (10th Cir. 1988) ..................................................................................................1

*First Nat. Bank of Ariz. v. Cities Service Co.*,
 391 U.S. 253 (1968)...................................................................................................................2

*Quinn v. Syracuse Model Neighborhood Corp.*,
 613 F.2d 438 (2nd Cir. 1980)....................................................................................................1

## Rules

Fed. R. Civ. P. 56(c)(1)...................................................................................................................1

117685234.1

Fed. R. Civ. P. 56(e) ........................................................................................................1

## Other Authorities

1 Robert L. Dunn, *Recovery of Damages for Lost Profits* § 1.8 (6th ed. 2005) .............................9

117685234.1

In support of its Motion for Summary Judgment, Plaintiff Davidson Oil Company offers the following points to reply to the arguments raised by Defendant City of Albuquerque in response to the motion.

## 1. City Does Not Raise a Genuine Issue of Material Fact

The City does not raise a genuine issue of material fact in response to Davidson Oil's Statement of Undisputed Material Facts. *See* City's Response to Davidson Oil's Motion for Summary Judgment (Document 57) (hereinafter "Response") at 3 to 6. These responses are as follows:

### (a) Admissions

The City admits in whole or in part Facts 1 to 13, 17 to 24, 30 to 32, and 35.

### (b) Lack of knowledge

The City states in whole or in part that it "lacks sufficient knowledge or information to form a belief as to the truth of" Facts 13 to 16, 18, 24 to 32 and 35. None of these responses give rise to a dispute of fact.  To properly dispute a fact alleged in a motion for summary judgment, the non-moving party must either cite to particular materials in the record or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). If a party fails to properly address an assertion of fact, the court may consider the fact undisputed or grant summary judgment to the movant. *See* Fed. R. Civ. P. 56(e).

A party opposing summary judgment also cannot use conclusory allegations or denials as a way to defeat the motion for summary judgment. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2nd Cir. 1980); *see also Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) ("The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party. The litigant must bring to the district court's attention

1

some affirmative indication that his version of relevant events is not fanciful.") (*citing Quinn*, 613 F.2d at 445). Such denials of facts asserted must be supported by affirmative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290 (1968) (plaintiff's mere allegations of a conspiracy, without affirmative evidence to support them, were insufficient to controvert a properly supported motion for summary judgment by defendant).

*(c) Denials*

The City denies in whole or in part Facts 19, 33 and 34. None of these denials give rise to an issue of fact, however. In response to Fact 19, the City admits its notice of termination of the Contract but states that its reasons for termination went beyond the fall in oil prices and the pandemic to include budgetary concerns. As discussed in Section 3, *infra*, the City's alleged reasons for termination other than the fall in oil prices are immaterial. In response to Facts 33 and 34, the City does not cite to any materials in the record supporting its denials.

*(d) Legal Conclusion*

The City contends that Fact 25 constitutes a legal conclusion or, to the extent a response is required, it lacks sufficient knowledge or information concerning this fact. Fact 25 sets forth statements in Chan Davidson's affidavit that his company was damaged as a result of the termination of the Contract and identifying those damages. These statements are plainly factual recitations well within the personal knowledge of Mr. Davidson and the City fails to offer any explanation as to why they should be deemed to express a legal conclusion.

**2. No Issue of Material Fact as to Lack of City Intent to Honor Contract**

The City contends that the undisputed facts do not support the assertion that the City did not intend to honor the Contract at the time of award.[1] Response at 7 to 11. The City primarily relies on the deposition testimony of its Chief Financial Officer, Sanjay Bhakta, to say that it "intended to honor the contract under the normal circumstances it believed would continue to exist for the duration of the contract." Response at 9. Without exploring the City's defense any further, this statement alone establishes that the City's commitment to the Contract was always conditional on market prices

The same deposition testimony of Mr. Bhakta cited by the City was first relied upon by Davidson Oil in its motion. *See* Motion for Summary Judgment at 18. The City adds further passages from this examination reiterating the same testimony. What is striking about the Bhakta testimony is his repeated refusal to state without qualification that the City intended to honor the fixed prices it had negotiated with Davidson Oil. Fact 20, *citing* Bhakta depo. at 30-31, lns. 9-11, attached as **Exhibit 3** to Motion.

The City's lack of commitment to the prices in the Contract is amplified by the deposition of the City's Chief Procurement Officer, Jennifer Bradley. Ms. Bradley testified as follows:

> Q. …When the City entered into the fixed-price contract with Davidson Oil in January of 2020, is it fair to say that the City recognized that depending on what happened in the oil market, the City may end up paying Davidson more for fuel oil than the market price?
>
> A. That's fair, yeah.
>
> Q. And the City was willing to do so?

---

[1] The City's breach of the bad faith standard in terminating the Contract to seek a better bargain from a competing supplier is addressed in the Motion for Summary Judgment (Document 53) at 14 to 18.

A. Yes. Well, I don't know if the City, who – I mean, the – City is a big word, so would budget be happy about it? Would admin be happy about it? Departments having to do it be happy about it? Purchasing be happy about it? That's a different answer for everybody, probably.

Q. Well, who speaks for the City with regard to this case?

A. There's probably different parts of it that different parts of the City would speak to. I can tell you about procurement. I can't tell you about all the investment information and all that, you know, decisions that were made or anything like that, but you mean the outcome of the case? I would think that would be City legal if there was decisions.

*See* Deposition of Jennifer Bradley, excerpts of which are attached hereto as **Exhibit 4** [2],  at 72-73, lns. 9-7.

The City has no choice but to acknowledge that just 17 days after entering into the Contract, it requested an adjustment to the fixed prices to which it had just agreed. Response at 10 to 11. This immediate step back from the contract terms further underscores that the City only intended to pay contract prices so long as better prices were not available. The City fails to offer any explanation as to how it could have fully intended to honor the Contract when executed but was seeking to reverse course a little more than two weeks later.

### 3.  No Issue of Material Fact That Changed Circumstances Did Not Exist

The City attempts to avoid a finding that its exercise of the termination convenience (TFC) clause was a breach of contract by contending it was justified by a change of circumstances. Response at 12 to 14. The undisputed facts say otherwise.

The City argues "the facts show that it was not only market fluctuations that led the City to invoke the TFC, but also the pandemic that caused the City to have budgetary concerns resulting

---

[2] Exhibits 1 through 3 are attached to the Motion for Summary Judgment and Exhibits 4 and 5 are attached to this reply.

from the uncertainty of gross receipts taxes." Response at 13. These contentions cannot create a material issue of fact as to the presence of changed circumstances. Notably, the City's notice of termination on March 19, 2020 gave no reason for this action whatsoever. Fact 19, *citing* **Exhibit 1-E.**

The critical fact about changed circumstances that the City cannot escape is that it did not terminate the Contract because it decided not to buy fuel. This is not a situation where, for example, the City concluded that as a result of the pandemic it was no longer appropriate to build a new building and thus cancelled the construction contract. To the contrary, the City still needed fuel and it still intended to buy fuel. It simply decided to purchase that fuel at prices lower than the fixed prices called for by the Contract. Thus, it contracted with another fuel supplier for these lower prices. Fact 24.

The City's termination for convenience to seek lower prices does not result from a material change concerning the bargain reached between the parties or their expectations. As already noted several times by Davidson Oil, the Contract anticipated market fluctuations in calling for fixed prices. Facts 1 & 8. When asked by prospective bidders if they could propose prices tied to market prices, the City repeatedly stated it would not consider such bids. Fact 3. Immediately following contract award, Davidson Oil purchased hedge contracts to assure its ability to deliver fuel at the fixed prices to which the parties agreed. Fact 13. The City's insistence on fixed prices reflects the reality that the oil market is volatile. Fact 35.

The City further attempts to create a factual issue as to changed circumstances by maintaining it "exercised the TFC to terminate other contracts for the same reason." Response at 13 *citing* Exhibit C to the Response. Yet a look at other City contracts actually undercuts this defense.

Exhibit C consists of the City's Answer to Davidson Oil's Interrogatory No. 15 and the Bates-numbered documents produced in support of this answer. In its interrogatory, Davidson Oil asked the City to identify every contract the City terminated for convenience in 2020 and 2021. According to its Chief Financial Officer, the City has at any given time "hundreds" of procurement contracts. Deposition of Sanjay Bhakta ("Bhakta depo."), excerpts of which are attached hereto as **Exhibit 5**, at 79, lns. 13-19. Notwithstanding this volume of contracts, in addition to the Contract with Davidson Oil, the City could only identify nine contracts in response to the interrogatory. Moreover, of these nine contracts, one was terminated in 2018 and so it had nothing to do with the pandemic (Bates No. 1460). There is also no evidence provided by the City that four of these contracts were terminated for convenience (Bates Nos. 1462, 1464, 1472 and 1483). This leaves a grand total of four other City contracts that appear to have been terminated for convenience in 2020 or 2021. They are seemingly inconsequential contracts for:

- Media, marketing, outreach and videography training (Bates No. 1461)
- Graphic design, layout and video production (Bates No. 1463)
- Three truck wraps (Bates No. 1467)
- Six animal enclosures for a cargo van (Bates Nos. 1469-1471)

Termination for convenience hardly appears to have been a key City strategy for coping with the budgetary effects of the pandemic. Rather, the termination for convenience of the Contract with Davidson Oil was an outlier brought about the by the availability of cheaper fuel prices elsewhere.

### 4. Facts Show City Liable for Breach of Implied Covenant

Even if the Court should somehow conclude that the City did not breach the TFC clause in terminating the Contract, the City still breached the implied covenant of good faith and fair dealing.

6

The City contends the implied covenant does not override the TFC clause and the facts do not support a breach of the covenant. Response at 14 to 16.

Davidson Oil does not maintain that the implied covenant overrides the TFC clause. The undisputed facts show however, that the City violated the spirit of the deal between the parties and denied to Davidson Oil the benefit of its bargain. *See, e.g.*, *Sanders v. FedEx Ground Package System, Inc.*, 2008-NMSC-040, ¶¶ 9 & 10, 188 P.3d 1200, 1203. The City solicited bids for a fuel supply contract at fixed prices. Fact 1. The City stated the Contract would be exclusive. Facts 1 & 2. The City repeatedly emphasized it would not accept prices tied to market rates. Fact 3. The City sought best and final offers. Fact 6. The City required Davidson Oil to hedge its prices for the quantities specified in the RFB. Fact 3. The City exercised the TFC clause after Davidson Oil purchased hedge contracts but before the company could commence any deliveries of fuel. Facts 13 & 19. The City terminated the Contract to seek cheaper market prices. Facts 17, 19 & 24. The City entered into a new fuel supply contract tied to market prices with another vendor. Fact 24. The City refused to rescind the termination to allow Davidson Oil to avoid pending losses on its hedge contracts. Fact 23. The City refused to compensate Davidson Oil for its hedge losses. Fact 34. The City refused Davidson Oil the opportunity to mitigate its damages. Fact 24.

### 5. No Issue of Material Fact as to Damages Incurred by Davidson Oil

The City maintains there are two issues of fact which preclude an award of damages to Davidson Oil on summary judgment. According to the City, Davidson Oil cannot establish lost profits without proving the quantity of fuel the City would have purchased at the fixed prices called for by the Contract during the first year and Davidson Oil has not offered such proof. The City further contends that Davidson Oil cannot recover its losses on the hedge contracts because it still might have suffered hedge losses had the Contract not been terminated. Response at 16 to 17.

Davidson Oil bases its calculation of lost profits on the volumes projected by the City when the Contract was executed. As such, these estimates are appropriately used to calculate damages because they reflect Davidson Oil's expectation upon entering into the Contract, and they remained Davidson Oil's expectation up to the time the City breached the Contract by terminating it. Facts 30 & 31. Damages for lost profits can be awarded so long as they were a "proximate result of the breach and . . . there is some basis on which a reasonable estimate of the amount of the profit can be made." *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1349 (Fed. Cir. 2001).

At a minimum, the City is liable to Davidson Oil for lost profits on the actual amount of fuel it purchased from the replacement supplier during the first year of the Contract. *See, e.g.*, *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 40, 121 N.M. 622, 916 P.2d 822. Such a measure could be a reasonable alternative means of calculating lost profits.

Without citing any facts in the record, the City maintains that due to austerity measures, it would have purchased "far less" fuel at the higher prices called for by the Contract. Response at 17. According to the City, Davidson Oil has failed to make a required showing of the quantity of fuel the City would have purchased at contract prices. *Id.*

The City's argument that lost profits cannot be proved without establishing how much fuel the City would have actually have purchased in 2020 and 2021 at contract prices lacks any substantiation of its factual premise, *i.e.* that the fixed prices the City agreed to pay Davidson Oil were higher than what it paid to the replacement contractor, Truman Arnold Company (TAC). *See* Facts 24 & 32. The City's contract with TAC was tied to market prices. Fact 24. But curiously, the City neglects to say what prices it paid to TAC and how they compared to the fixed prices it agreed to pay Davidson Oil. It is entirely possible that the market prices paid to TAC were at times higher than the fixed prices. The fall in oil prices that prompted the City to terminate the Contract

8

bottomed out by April 2020 (before Davidson Oil would even have commenced deliveries) and by February 2021 market prices were higher than the contract prices. Facts 27 & 35.

The City's argument also disregards the reality that a municipality's demand for fuel is relatively inelastic. Vital public services like police and fire protection cannot be scaled back when fuel costs rise. Even slightly less vital public services like garbage pick-up and bus schedules can be curtailed only to a limited extent before citizens object.

To satisfy the damages element of the breach of contract claims, Davidson Oil need only show with reasonable certainty the fact that such damages occurred. *Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 27, 301 P.3d 387, 396 (citing 1 Robert L. Dunn, *Recovery of Damages for Lost Profits* § 1.8, at 25 (6th ed. 2005)).

After establishing that damages did in fact occur, Davidson Oil can prove the amount of lost profits damages simply by showing there is a reasonable basis on which the amount of damages can be ascertained. *See id.* ("[L]ess certainty (or none at all) is required to prove the amount of damages."); *see also Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 56, 400 P.3d 290, 302 (amount of damages claimed for breach of contract need only be reasonably ascertainable). Furthermore, there is no requirement that the computation of damages be done with mathematical certainty. *See, e.g.*, *Nosker v. W. Farm Bureau Mut. Ins. Co.*, 1970-NMSC-046, ¶ 8, 466 P.2d 866, 868. "Where a legal right to damages exists for breach of contract, the fact that lost profits may not be computed with exact mathematical certainty does not prevent the plaintiff from submitting the issue to the fact finder." *Ranchers Expl. & Dev. Corp. v. Miles*, 1985-NMSC-019, ¶ 5, 696 P.2d 475. "[D]amages are defeated only where there is uncertainty as to the cause of damage rather than the amount of damage." *Horizon Well Serv., LLC*

*v. Pemco of N.M., LLC*, No. A-1-CA-36742, 2020 WL 4260396 at \*2 (July 20, 2020) (quoting *Ranchers Expl. & Dev. Corp.*, 696 P.2d at 477.)

The City's second damages defense is that Davidson Oil would have lost money on its hedge contracts even if the Contract had not been terminated. This is because the volume of fuel in the hedge contracts reflected the estimated quantities of purchases set forth in the RFB and thus, says the City, these quantities were in excess of actual consumption. Response at 17. Davidson Oil purchased hedge contracts for the fuel quantity estimated by the City because that is what the City told the company to do. Addendum #1 to the RFB informed prospective offerors that "[i]t is the City's belief that the bidder should have its supplies already hedged in such a way, or the ability to hedge *the volumes stated in the RFB*, to permit it to offer a fixed price at the close date." [Emphasis added]. Fact 3.

Having complied with the City's instructions, Davidson Oil cannot be denied recovery of the damages that directly arise from the City preventing performance of the Contract. *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 20, 891 P.2d 1190, 1197 (1995) (*overruled on other grounds by Sunnyland Farms,* 2013 NMSC-017, 301 P.3d 387. ("In an action for breach of contract the party who fails to perform the agreement is justly responsible for all damages flowing naturally from the breach.");  *Sunnyland Farms,* 2013 NMSC-017, ¶ 11, 301 P.3d at 392. ("This Court has previously stated that in an action for breach of contract, the breaching party is justly responsible for all damages flowing naturally from the breach.") (internal quotations omitted).

### 6.  If Nothing Else, Davidson Oil Entitled to Compensation for Cost of Performance

Alternatively, even if the City both properly exercised the TFC clause and complied with the implied covenant, under the TFC clause it is still responsible for compensating Davidson Oil

for the costs the company incurred prior to termination in order to perform the Contract. The City contends that Davidson Oil's hedge losses are not recoverable pursuant to the TFC clause because according to the City, compensation under the TFC clause is required only for goods and services "*provided*" to and "*accepted*" by the City. Response at 18.

In advancing this argument, the City ignores the fact that by purchasing hedge contracts, Davidson Oil conferred a benefit on the City. Davidson Oil purchased the hedge contracts to fulfill a requirement of the Contract. Fact 3. By entering into the hedge contracts, Davidson Oil ensured that no matter the market prices, the company could honor the fixed prices required by the City. Fact 13.

Not only did the hedge contracts secure the City's ability to pay fixed prices for fuel, Davidson Oil also spared the City the burden of having to purchase its own hedge contract had it chose to contract for fuel at market rates. As acknowledged by the City's Chief Financial Officer, the Contract transferred to Davidson Oil the obligation to seek a hedge contract and deal with the complexities of that arrangement. *See* Bhakta depo., Exhibit 5, at 64, lns. 13-22. *See also*, Bhakta depo. at 62-63, lns. 17-11.

Davidson Oil *provided* the City with the hedged prices the Contract required. The City *accepted* Davidson Oil's hedge by enjoying the benefits of the hedge contracts. The fact that the City decided to forfeit these benefits by seeking cheaper fuel prices elsewhere cannot prevent Davidson Oil from recovering the monies it paid so it could perform the Contract. At a minimum, Davidson Oil is due compensation under the terms of the TFC clause.

**Request for Relief**

For the reasons set forth in its Motion for Summary Judgement and this reply, Davidson

Oil Company respectfully requests the Court to grant the motion and award the relief sought

therein.  Alternatively, Davidson Oil asks for alternative relief requested in the motion. Davidson

Oil lastly requests such other relief as the Court may deem just and proper.


LEWIS ROCA ROTHGERBER CHRISTIE LLP

By   */s/ Ross L. Crown*
    Ross L. Crown
    *Attorneys for Plaintiff Davidson Oil Company*
    201 Third Street NW, Suite 500
    Albuquerque, NM  87102
    505-764-5402
    rcrown@lewisroca.com

12

## CERTIFICATE OF SERVICE

I certify that on May 23, 2022, I served a copy of the foregoing reply in support of motion for summary judgment on the attorneys listed below through the Court's case management and electronic filing system:

John E. DuBois
Assistant City Attorney
Devon P. King
Managing Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500 / F: (505) 768-4525
jdubois@cabq.gov
dking@cabq.gov


Janette Angelica Duran
Robert J. Desiderio
Erin S. Ferrerira
Sanchez, Mowrer & Desiderio, P.C.
P.O. Box 1996
Albuquerque, NM 87103
T: (505) 247-4321
F: (505) 247-4441
jaduran@smdlegal.com
rjdesiderio@smdlegal.com
erin@smdlegal.com


 /s/ Ross L. Crown
Ross L. Crown

13

117685234.1